**Norfolk**

TIDEWATER PSYCHIATRIC INSTITUTE, INC.

v.

C. M. G. BUTTERY, M.D., M.P.H,

and

FIRST HOSPITAL CORPORATION OF VIRGINIA BEACH, INC.

No. 1204-88-1

Decided July 11, 1989

COUNSEL

Donald E. King, Robert T. Adams, Thomas J. Stallings (McGuire, Woods, Battle & Boothe, on brief), for appellant.

Carol S. Nance, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee, C. M. G. Buttery, M.D., M.P.H.

Thomas F. Hancock, Jr., and Peter M. Mellette (Crews & Hancock, on brief), for appellee, First Hospital Corporation of Virginia Beach, Inc.

OPINION

MOON, J.— We affirm the judgment of the Circuit Court of the City of Virginia Beach because we find that the Commissioner of Health did not abuse his discretion by denying Tidewater Psychiatric Institute standing as a party in the proceedings below.

On February 13, 1987, the First Hospital Corporation of Virginia Beach (FHCVB) submitted an application for a Certificate of Public Need (COPN) to the Virginia Commissioner of Public Health, Dr. C. M. G. Buttery. FHCVB sought to build a sixty bed psychiatric hospital in Virginia Beach. The commissioner's staff read the application, submitted a list of questions to FHCVB, and received responses to the questions. On the application, FHCVB responded to the questions about ownership of the site by claiming that the site would be acquired as a gift from FHCVB's parent corporation.

On March 10, 1987, the commissioner deemed FHCVB's application complete. On April 24, 1987, the commissioner held a public hearing on FHCVB's application, which was attended by representatives of the Tidewater Psychiatric Institute, Inc. (TPI), a company which owns all of the psychiatric hospitals in Virginia Beach. On May 19, 1987, the commissioner's professional staff completed their review of FHCVB's application and recommended approval of the application. Their report included a financial analysis of the application, which forecasted that FHCVB would incur capital costs of $4,339,130 and that the new hospital would make a profit of $59,820 in its first year and $275,992 in its second.

Pursuant to state COPN regulations, TPI filed a letter with the commissioner seeking to show good cause why it should be admitted as a party to the FHCVB application procedure. In accord with the COPN regulations, a state Department of Health hearing officer held a conference between TPI and FHCVB. TPI was allowed to argue that it should be recognized as a party to the proceeding on FHCVB's application for a COPN. TPI's main argument at the conference was that FHCVB's application implied that the site for the new hospital would be acquired as a gift from FHCVB's parent company.

In response to TPI's objection, FHCVB revised its application to reflect that FHCVB would lease the site from its parent company for $425,250 per year. On July 20, 1987, TPI filed a motion with the Health Department hearing officer to dismiss FHCVB's application on the ground that the revision of the application constituted a significant change. TPI claimed that the addition of an annual lease expense of $425,000 would have the effect of changing the projected first year income from a profit of $59,820 into a loss of $365,430 and the projected second year income from a

profit of $275,992 into a loss of $149,258. Thus, with the addition of the cost of the lease to the capital costs listed on the original application, TPI argued that the project would be financially unsound.

The hearing officer approved the FHCVB application based on two factual considerations: (1) the sixty beds that would be housed in the new facility would be transfers from other hospitals that were already overutilized; and (2) the lease expenditure of $425,000 was a transfer from the $4,339,130 listed on the original application, not an addition to the operating costs listed on the original application. Thus, the hearing officer found that the total cost of the project, even as revised, was $4,339,130. In fact, the hearing officer ordered that the capital cost allowable under the issued COPN would be limited to the cost indicated on the original application, which was $4,339,130. Because the cost of the project was limited to the dollar amount listed on the original application, the hearing officer found that TPI did not show good cause why it should be admitted as a party to FHCVB's application.

TPI appealed the Health Department decision to the Circuit Court of the City of Virginia Beach. The parties to the appeal submitted briefs to the trial court and oral argument was held. By letter opinion of July 8, 1988, the trial court held that there was substantial evidence to support the hearing officer's finding that TPI failed to demonstrate why it should be admitted as a party to the application process.

In its brief, TPI assigns five categories of error from the trial court. However, the threshold inquiry in this appeal is the question of TPI's standing to participate in the application process. All other questions relate to the substantive issues of the case, and those substantive issues may not be reached unless we hold that TPI was improperly denied standing as a party to the COPN process.

Code § 17-116.05 allows any "aggrieved party" to appeal any final decision of a circuit court on appeal from an administrative agency. In this case, TPI was not a party to the administrative proceedings. The Health Department did not allow TPI to intervene in the substantive aspect of the case. A person cannot appeal a case to which he is not a party. *See, e.g., Campbell's v.*

*Bowen's Administrators*, 40 Va. 241 (1 Rob. 255, 269) (1842). However, the Circuit Court of the City of Virginia Beach did allow TPI to appeal the agency's final order denying TPI permission to intervene, and TPI was, thus, a party to the case in circuit court but only on the issue of TPI's standing and right to intervene. Therefore, although TPI is not a party to and may not appeal the substantive issues of the case, TPI may appeal on the issue of its standing and the right to intervene.

■ Under Code § 32.1-102.6(E), any person that wishes to participate in a COPN application review must demonstrate to the state Commissioner of Health "good cause" why he or she should be allowed to participate. "Good cause" may be found only if the person seeking admission to the litigation can prove the existence of one of three conditions enumerated in the statute: the exclusion of significant relevant information, a significant change in the factors or circumstances relating to the application, or a mistake of fact or law in the staff report or report of the health system agency.

In this appeal, TPI argues that all three of the conditions enumerated in the statute were proven at the conference before the Health Department hearing officer.

First, TPI claims that the $2,224,000 site acquisition cost is "significant relevant information" that was not available at the public hearing. TPI claims that it was not able to discover the cost of acquiring the site before the public hearing because FHCVB failed to report it on the original application for the COPN. Therefore, TPI asserts that it should have been able to enter the application process after the public hearing to demonstrate that the project would be financially unsound if FHCVB incurs the costs of acquiring the site.

■ Second, TPI argues that it showed good cause by demonstrating that a significant change in the application occurred after the public hearing. Under Code § 32.1-102.6(B), a public hearing must be held on each application for a COPN. TPI argues that the public is entitled to rely upon an applicant's representations, and that allowing reliance on the application protects the policy of allowing the public to give the commissioner the benefit of diverse opinions and analyses of an applicant's proposal. *See, e.g., Chocolate Manufacturers Association v. Block*, 755 F.2d 1098, 1103-04

(4th Cir. 1985) (public hearings promote optimal decision-making if all interests are allowed to be heard). TPI argues that when FHCVB changed its application to reflect an annual lease payment of $425,000, a significant change in the application occurred. As a result of the change, TPI claims that it was denied the opportunity to comment on the change at the public hearing and the only opportunity it then had to comment would have been as a party to the application process.

However, we find that since the hearing officer ordered the total capital expenditure of the new hospital limited to the dollar amount scheduled on the original application, the commissioner did not abuse his discretion in finding that there was not a significant change in the application. Further, we find that the commissioner did not abuse his discretion in finding that the cost of acquiring the site was not significant relevant information within the meaning of the statute. The Health Department COPN regulations define significant changes as those that involve differences of ten percent or more from the original application. By that standard, the addition of the $425,000 lease is not a ten percent change. We also find, based on the record before us, that the commissioner could have found that the $425,000 lease expense was included in the original application under the category of "other expenses."

Third, TPI claims that it proved good cause by demonstrating that FHCVB's profit and loss forecasts constituted a "substantial material mistake of fact." TPI claims that, even if the change to a lease were proper, FHCVB's failure to include the lease expense in its financial projections was a substantial mistake. If the lease expense had been included in the projections, FHCVB would have projected a biennial annual loss of $514,688 rather than a profit of $335,812. However, the Health Department argues, implicitly, that since the hearing officer limited the total cost of the project to the value of the original application, the site acquisition costs would be subsumed in the total expenditure of $4,339,130. Thus, according to the state, there was not a mistake since the hearing officer eliminated the possibility of a mistake by limiting the amount that FHCVB was authorized to spend, and FHCVB may not spend more than the amount allowed under the approved application for this COPN without first seeking approval from the commissioner.

■ The standard of review in COPN cases, generally, is "arbitrary and capricious." For example, in *Johnston-Willis v. Kenley*, 6 Va. App. 231, 244, 369 S.E.2d 1, 9 (1988), a COPN case, this court held that when an agency is acting within its statutory authority and is applying the basic law delegating that authority in rendering the decision, the issues are legal issues that fall within the specialized competence of the health commissioner, and the court should give deference to the commissioner's decisions unless they were "arbitrary and capricious." However, on issues of fact, the standard of review is "substantial evidence." This standard was first articulated in *Virginia Real Estate Commission v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 123 (1983), where the Supreme Court held that an agency's decision should be reversed "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion."

It is clear that, under the statute, TPI had the burden of persuading the agency that the facts regarding the acquisition of the site for the new hospital were significant and relevant, involved a significant change, or constituted a mistake of law or fact. To this extent, the agency's determination that the lease facts were not sufficient to allow TPI to participate in the application process were findings of fact that may be reversed only if we find that those findings were unreasonable. We do not find that the Commissioner of Health's findings of fact were unreasonable. The record demonstrates that all of the information which TPI sought standing to present in the proceedings below was considered by the commissioner without the presence of TPI as a party to the case. Therefore, we hold that the commissioner did not act in an arbitrary and capricious manner when he denied standing to TPI.

*Affirmed.*

Hodges, J., and Cole, J., concurred.