## CIRCUIT COURT OF THE CITY OF RICHMOND

Environmental Defense Fund, Inc.

v.

Virginia State Water
Control Board et al.

April 25, 1990

Case Nos. (Chancery) N-7848-3 and N-8078-3

By JUDGE T. J. MARKOW

These two cases are before the court on appeal from decisions of the State Water Control Board regarding the reissuance and modification of a Virginia Pollutant Discharge Elimination System permit to Rocco Farm Foods, Inc., an operator of a poultry processing facility in Shenandoah County, Virginia. Rocco is a defendant by intervention. In both cases the appellant, Environmental Defense Funds, Inc. (EDF) claims authority to proceed under Va. Code Ann. § 9-6.14:16 of the Virginia Administrative Process Act and under the appeals section of the State Water Control Law, Va. Code Ann. § 62.1-44.29.

Rocco operates a poultry processing plant near Edinburg in Shenandoah County, Virginia. The permit authorizes the discharge of effluent into Stony Creek, a tributary of the North Fork of the Shenandoah River.

Rocco's previous permit was renewed in June, 1988. Such permits place limits on the amount of effluent which can be discharged into Stony Creek. The limits are based

upon regulations which presume a single yearly low river flow value. In other words, the amount of effluent that can be discharged is determined by the amount thought to pose no harm to the environment when the river flow is at its lowest, probably the summer months. The permittee would not be allowed to place more effluent into the stream during the winter when there would most likely be a higher river flow. The June, 1988, permit was issued with such restrictions.

In July, 1988, after the permit was issued, the Board staff issued a memorandum for general guidance which would allow differing amounts of effluent to be discharged to coincide with anticipated changes in river flow rates. The parties refer to permits of this nature as "flow tiered permits." For example, lower amounts of effluent could be discharged when river flow was lowest, as in the dry season, but higher amounts could be discharged in the rainy season when the river flow rate was higher.

The staff memorandum would not automatically result in change in any permitted discharges. A permittee would have to request a change in its permit, and the Board would then be required to act upon the permittee's request for a flow tiered permit. EDF contends that the use of the memorandum was a regulation that was not adopted in the required manner and is, therefore, unlawful.

Rocco petitioned the Board to amend its permit to a flow tiered permit.

The Board received public comment concerning the reissuance of the Rocco permit and its modification to a flow tiered permit. EDF attended the public hearings, made comments, and submitted written comments.

EDF asserts standing as the result of its participation in the hearings, its organizational purpose of environmental protection, and as the representative of some of its members who claim to be affected riparian owners and users of the affected stream.

In the first case (Rocco I), EDF appeals the Board's decision in reissuing and modifying the Rocco Permit. In the second case (Rocco II), EDF appeals the Board's denial of its request for, and participation in, a formal adjudicative-type hearing in connection with the decision to issue the Rocco permit. This matter is now before the court on demurrers in each of the two cases.

The threshold issue is whether EDF has standing in either case. Two code provisions are involved. Va. Code Ann. § 9-6.14:16, the appeals section of the Administrative Process Act, and Va. Code Ann. § 62.1-44.29, the appeals section of the State Water Control Law under which the State Water Control Board functions.

Appeals under the State Water Control Law are available to "any *owner* aggrieved by a final decision of the Board . . . whether such decision is affirmative or negative in form, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act." Va. Code Ann. § 62.1-44.29 (emphasis added). The APA provides for judicial review to "Any person affected by and claiming the unlawfulness of any regulation, or any party aggrieved by and claiming unlawfulness of a case decision . . . ." Va. Code Ann. § 9-6.14:16. The court is of the opinion that appeal rights may be exercised under the APA even if unavailable under the State Water Control Law as the Water Control Law does not specifically exclude the APA appeal. *See* Va. Code Ann. § 9-6.14:3.

EDF is entitled to appeal the decisions complained of only if the court finds it to be (1) an "owner aggrieved" Va. Code Ann. § 62.1-44.29; (2) a "person affected" by and claiming unlawfulness of any regulation; or (3) a "party aggrieved" by and claiming unlawfulness of a case decision. Va. Code Ann. § 9-6.14:16(A). Otherwise, the demurrers must be sustained.

EDF asserts its right to appeal in a representative capacity; *i.e.*, that it has members whose riparian rights and uses of Stony Creek are directly affected by the Board's actions. It is not, itself, an owner with riparian rights, an owner with a facility seeking to discharge effluent into state waters or otherwise directly affected by action or inaction of the Board. The court is not here suggesting that riparian owners or river users are directly affected by Board action. It makes no decision on those issues as they are not before the court.

The court does not find EDF to be an "owner aggrieved" under § 62.1-44.29 of the State Water Control Law. While the code defines "owner" so broadly as to include any type of entity, including a corporation such as EDF, it would make no sense to construe the statute to mean "any entity" aggrieved which could include any entity in the

universe. The court does not believe that interpretation was intended by the legislature. A more rational interpretation would qualify the word "owner" to mean an entity subject to the State Water Control Board's power and jurisdiction; *i.e.*, an entity which owns or operates an actual or potential discharge source or a permit issued by the Board. As EDF is not an "owner aggrieved," it has no right to appeal under § 62.1-44.29 of the code.

The State Water Control Law is not the only source of a right to appeal an administrative agency's decision. Unless expressly precluded by the State Water Control law, a person may obtain judicial review under the Administrative Process Act if it can establish that it is "Any person affected by and claiming the unlawfulness of any regulation or party aggrieved by and claiming unlawfulness of a case decision." Va. Code Ann. § 9-6.14:16(A). The court does not find that the State Water Control Law precludes appeals by persons fitting within these definitions.

Under the first option, the court must find that EDF is a "person affected" by an unlawful regulation.

Here EDF claims that a Board staff memorandum entitled "Flow Trend VPDES Limits" was an unlawful rule or regulation.

What is complained of here is a staff memorandum used by the staff in drafting modifications to permits. In order to become a rule or regulation, there must be a "promulgation by an agency . . ." *See* Va. Code Ann. Section 9-6.14:4. By definition, this memorandum was not promulgated by the agency, nor did it bind the Board in considering whether or not to issue or modify the permit. Under the facts alleged, this was not a rule. Accordingly, EDF must find authority to appeal under the "party aggrieved" portion of § 9-6.14:16 of the Code.

EDF does not meet this standard either, as it was not a "party" as that term has been defined by the Supreme Court or the Court of Appeals.

A "person cannot appeal a case to which he is not a party." *Tidewater Psychiatric Institute, Inc. v. Buttery*, 8 Va. App. 380, 383, 382 S.E.2d 288, 290 (1989). Not everyone appearing before or participating in an administrative hearing is a party having a right to appeal. *See Tidewater Psychiatric Institute, Inc. v. Buttery, supra,*

and *D'Alessio v. Lukhard*, 5 Va. App. 404, 363 S.E.2d 715 (1988).

The Board defines the applicant or permittee as parties, not members of the public who appear in connection with the permit application, even if they are riparian owners of the stream in question. *See* Procedural Rule No. 1, 81.13(a). That definition is consistent with the statutory scheme. EDF's argument would lead to a holding that anyone appearing for any purpose before any agency operating under the Administrative Process Act would be a party having the right to appeal. The court cannot accept that construction of the term "party."

Nor is EDF aggrieved by the Board's issuance of the permit modification. It has filed affidavits that some of its members are riparian owners of the stream in question and that other EDF members use the waterway for recreational purposes. These affidavits are incorporated with EDF's pleadings and on demurrer are accepted as true. EDF's members, however, do not attempt to participate in these appeals; EDF does. It does not assert that it is an adversely affected riparian owner or that it will be adversely affected by the Board's action, except through adverse impact on its members. It appears solely in a representative capacity.

EDF cites many cases supporting appearance by entities in a representative capacity, most of which are federal cases which construe different statutes from the Virginia Administrative Process Act. Here, unless EDF is a party aggrieved, it cannot appeal. As a policy consideration, this court is fearful of expanding the term "party" beyond the traditional meaning of an entity directly suffering an injury caused by the defendant, thereby changing long-standing state policy. *See Page v. Commonwealth*, 157 Va. 325, 160 S.E. 33 (1931). So, also, in order to be "aggrieved," one must show a direct interest in the subject matter one seeks to attack on appeal. *Va. Beach Beautification Commission v. Bd. of Zoning Appeals of the City of Virginia Beach, et al.*, 231 Va. 415, 344 S.E.2d 899 (1986). Under no view of the pleadings can it be determined that EDF is directly affected or injured by the Board's action.

The policy requirement of direct injury is not an arbitrarily erected barrier to prevent organizations such as EDF from access to the courts. The purpose is that

articulated by Justice Powell in his dissent in *UAW v. Brock*, 477 U.S. 274 (1986), of attempting to insure that the courts have the effective, aggressive advocacy required for a proper determination of legal rights. Notwithstanding EDF's resources, its dedication to the preservation of the environment, and its reputation as an effective advocate for environmental preservation, it does not and cannot have (in a representational capacity) the same interests as one directly affected. Courts rely on that interest. This court will not blaze a path that might lead it and other courts away from obtaining the most effective advocacy possible.[1]

As the court has found EDF to be without standing in both cases, the demurrer will be sustained.

---

[1] Nothing here is in any way to be construed as criticism of EDF, its capabilities, or the effectiveness of its advocacy.