## CIRCUIT COURT OF THE CITY OF RICHMOND

Environmental Defense
Fund, Inc., et al.

v.

Virginia State Water
Control Board et al.

January 25, 1991

Case No. HA-731

By JUDGE T. J. MARKOW

The Environmental Defense Fund, Inc. ("EDF"), Juan Ramirez, Dr. Benjamin Rice, and Joseph W. Lawler ("Riparian Owners") filed a petition for appeal of the decision by the Virginia State Water Control Board ("Board") in the adoption of a water quality standard for the discharge of dioxin into the waters of the Commonwealth. The setting of the standard creates a rule or regulation within the meaning of the Administrative Process Act ("APA"). Chapter 1, 1:1 of Title 9, Code of Va.

The Board filed a motion to dismiss the appeal challenging the standing of EDF and of the Riparian Owners. It also asserts that the five counts relied on by the appellants identified no errors of law subject to judicial review. Chesapeake Corporation, Union Camp Corporation,

and Westvaco Corporation ("Intervenors") challenge the standing of the individuals and EDF and assert the legality of the Board's promulgation of the water quality standard.

The EDF and the Riparian Owners respond with motions to strike the demurrers and for summary judgment. By motion for summary judgment, they assert that the Board did not comply with statutory authority, employed illegal decision criteria, and failed to meet the mandated requirement of protection of stream uses. They request the court to remand the dioxin standard to the Board for reconsideration.

The first issue to be addressed is the appellants' standing, as it is the threshold issue determinative of the jurisdiction of the court. *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 611 F. Supp. 1542, 1545 (E.D. Va. 1985) *aff'd*, 791 F.2d 304 (4th Cir. 1986).

This is an appeal of an action pursuant to the State Water Control Law, Va. Code Ann. § 62.1-44.1 to 62.1-44.34:12. Much of the case law on standing has been focused on assertions of violations of constitutional rights, where such jurisprudential concerns as the doctrine of constitutional avoidance and of judicial economy served to shape the outcome. This case, however, is like that in *Sierra Club v. Morton*, in which the court said:

> Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," *Baker v. Carr*, 369 U.S. 186, 204, as to ensure that "the dispute sought to be adjudicated will be presented in an adversary contest and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 101. Where, however, Congress has authorized public officials to perform certain functions according to law and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.

405 U.S. 727, 732 (1972).

Here two statutes are in issue. Code § 62.1-44.24, which provides that "[t]he validity of any regulation may be determined through judicial review in accordance with the provisions of the Administrative Process Act (9-6.14:1 et seq.)." The APA provides that "any *person affected* by and claiming the unlawfulness of any regulation . . . shall have a right to the direct review thereof." Va. Code Ann. § 9-6.14:16 (emphasis added). This focuses the issue of standing on the answer to a single question, "Are the EDF and/or the riparian owners "persons affected" by the regulation? The APA does not define "person"; however, the Water Control Law does, as "any firm, corporation, association, or partnership, one or more individuals, or any governmental unit or agency thereof." Va. Code Ann. § 62.1-44.3 (Cum. Supp. 1990). "Affected" is not defined by either APA or the Water Control Law. The term has not been interpreted by the Court of Appeals of Virginia or Supreme Court of Virginia in the context of these code sections.

The Supreme Court of Virginia has, however, construed the term "persons affected" as it was used in Va. Code Section 15-152.6 in *Continental Baking Co. v. City of Charlottesville*, 202 Va. 798, 120 S.E.2d 476 (1961). The City filed a petition seeking to annex adjacent territory of Albemarle County. Continental Baking Company, along with 1242 residents of the county, and another group of 204 residents of the city, petitioned to intervene in proceedings appealing the order granting the annexation. The trial court found that none of the petitioners were "parties affected," and thus they lacked standing to appeal. The city contended that the appellants failed to allege and prove a "special" interest. In reversing, the court said:

> The statute neither expressly nor impliedly limits the right to appear and be made parties to persons who have special interests in the proceedings beyond the interests of others in the city or the remainder of the county. Its language is that *any* persons affected by the proceedings have the right to appear and defend. To hold that persons affected are only such persons as are affected in a special and

> different way from others in their area is to
> add a material provision to the statute rather
> than to give effect to it as written.

*Id.* at 804, 120 S.E.2d at 479.

An argument similar to the city's has been advanced by the Board in the case at bar. It says that the Riparian Owners here "appear to confuse their private property rights with the more general public interest," and that the only "persons" clearly affected by the standard are the dischargers of dioxin. If the court were to interpret "persons affected" as the Board urges, this could lead to the result that there would never be an advocate with standing to promote the adoption of stricter standards and only those voices crying for the allowance of more pollution would be heard. This is just what the Supreme Court found in *Continental Baking Company* would be the result of the narrow construction of the term "persons affected":

> The result could be that unless there were persons in those areas who had special interests (whatever might constitute such a class) and who wanted to come in and defend, there could be no defense to annexation by any resident of the City or by any resident of the remainder of the county, and those residents would have to accept whatever positions the City and County officials might take in the proceeding. There seems little doubt that the legislature did not intend such result . . . .

*Id.* There seems equally small doubt that the legislature could have intended to limit the ability to appeal water quality standards to those who are seeking to discharge pollutants.

The determination that the way in which the appellants are affected does not have to be unique or special beyond the interests of others, does not excuse them from having to show that they are affected. That is still necessary under the statute in order for them to achieve standing.

The court in *Continental Baking Company* found that the appellants' assertions that they were residents and

taxpayers in the areas which they alleged would be adversely affected by the annexation was sufficient to give them standing since "what affects the areas in which they live affects them."

The Riparian Owners who seek standing here allege that as persons with interests in riparian property along the James River below Covington, where a discharger of dioxin is located, they are persons affected by the adopted standards. Each alleges that the stretch of river along their property currently carries a "health advisory" from the Virginia Department of Health recommending against the consumption of fish from the area because of dioxin contamination. Each alleges use of the James River for fishing and other recreational purposes and that improper dioxin water quality standards could adversely affect their health and enjoyment of their riparian property. They further allege injury to their interests because of their inability to safely consume fish from the river, damage to their potential use of river water for irrigation or recreation, and to the overall value of their property rights.

The Board argues first that Riparian Owners have no rights in this matter beyond that of the general public or that if they do have some personal injury, the appropriate remedy for that is to bring a civil action against dischargers of dioxin. Code § 62.1-44.22 provides: "The fact that any owner holds or has held a certificate issued under [the State Water Control Law] shall not constitute a defense in any civil action involving private rights." Therefore, the Board argues, the dioxin standard and the discharge permits issued based on that standard determine the rights of an owner *vis-a-vis* the Commonwealth and the public, not *vis-a-vis* the appellants.

That assertion is based on the rule of *Zapulla v. Crown*, 239 Va. 566, 391 S.E.2d 65 (1990), which held that the Marine Resources Commission lacked authority to determine the riparian rights of adjoining landowners *inter se*. This court does not find that *Zapulla* is appropriately applied to this case. The issue there was a narrow one of the determination of boundaries between lands under the water, and the court merely followed *Groner v. Foster*, 94 Va. 650, 27 S.E. 493 (1897), which held that a court of equity is the proper forum for the settling of boundary

disputes between owners. The Marine Resources Commission had authority to issue a permit to build only in waters opposite the owner's riparian land. Its issuance of a permit did not amount to a determination of the riparian rights of the parties to the submerged land and had no *res judicata* effect upon any claims asserted as between adjoining riparian landowners; therefore, the Commission was not a proper party to a dispute between landowners about where the boundaries lie.

Riparian rights have been historically, and are now, accorded special protection in Virginia. The "duck blind statutes" of Title 29 of the Code give preferences to Riparian Owners in obtaining licenses. These statutes withstood attack as violative of the equal protection clause of the federal Constitution and § 63(18) of the Virginia Constitution which prohibits special laws granting special privileges or rights. *Avery v. Beale*, 195 Va. 690, 80 S.E.2d 584 (1954). The court in that case said:

> It is pertinent to note that the riparian owner has from very early time been recognized to have certain rights . . . that are not enjoyed by non-riparian owners . . . . These rights were recognized early in our history and are described in *Darling v. City of Newport News*, 123 Va. 14, 19, 96 S.E. 307 (1918), aff'd 249 U.S. 540, as "ancient rights of the riparian owners."

*Id.* at 702, 80 S.E.2d at 591. The court concluded that a classification of riparian owners was not an unreasonable and arbitrary distinction, since they are not similarly situated with nonriparian owners.

Even the most sweeping statements of the state's rights to control the use of public streams reserve some special protection to riparian owners. For instance, in the *Darling* case, cited above in *Avery v. Beale*, the court said:

> the bed of the navigable, tidal salt water and the waters themselves are owned and controlled by the State, for the use and benefit of all the public, subject only to navigation. It is

> for the State . . . through the legislative branch of the government, to say how much pollution it will permit to be emptied into and upon its waters, *so long as the owners of the land between low water and high water mark are not injured.*

123 Va. at 16-17, 96 S.E. at 307 (emphasis supplied).

The Board argues that, even if the appellants have suffered cognizable harm, they have failed to allege that the harm is caused by the Board or the water standards promulgated by it. Several United States Supreme Court decisions have focused on its requirement for standing of "a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72 (1978) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *see also, Arlington Heights v. Metropolitan Housing Authority*, 429 U.S. 252 (1977). Although the Court clearly identified this as a "constitutional standard," *Duke Power Co.* at 72, it appears to this court as a useful guideline for construing the statutory language of "person affected" as it is used in the VAPA, as well.

In *Warth v. Seldin*, 422 U.S. 490, 516 (1975), the Court held that a plaintiff, to successfully challenge exclusionary zoning practices, "must allege specific, concrete facts demonstrating that the challenged practices harm *him*, and that he personally would benefit in a tangible way from the courts' intervention." This is a method for testing whether the causal connection exists -- if the remedy would alleviate the alleged harm to the appellant, the link is established. *See Duke Power* at 75, n. 20.

Here the appellants seek to have the dioxin water quality standard reviewed and ultimately lowered. The injury they claim is damage to riparian property rights and values which has been caused by the presence of dioxin and which will continue unless the Board will regulate it effectively. "It is unrealistic to contend that because the respondents gave no orders directly to the petitioners to change their course of conduct, relief cannot be granted against what the respondents actually did." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 124, 141 (1950). The

damage to appellants may be alleviated by lowered dioxin presence in state waters, which may be achieved as a result of the remedy sought: that the Board require a lower permissible amount to be discharged by permittees. This meets the causation test and is the last obstacle the individual appellants must hurdle to show they are "persons affected" and thus have standing.

Having determined that the Riparian Owners have standing, the court must next consider whether EDF may remain in the case. It is a nonprofit membership environmental association. It does not own property which will be directly affected by the water quality standard. If EDF has standing, it is achieved through the interests of its members who have themselves demonstrated standing. The United Sates Supreme Court has said that an organization "can have standing as the representative of its members only if it has alleged facts sufficient to make out a case or controversy had the members themselves brought suit." *Warth v. Seldin*, 411 U.S. 490, 516 (1975). EDF has alleged injury to its members which demonstrates a justifiable interest has been affected. It also alleges that the Riparian Owners who have been determined to have standing are among its members.

Additionally, the Court said the nature of the relief sought will determine whether an association has standing to represent its members. The "remedy, if granted, [must] inure to the benefit of those members of the association actually injured." If the remedy sought is prospective, it is more likely to satisfy that requirement, unlike a situation where damages are sought for past harm, necessitating the participation of every individual in order to properly assess the distribution of the relief granted. *Id.* at 515. The remedy sought by EDF is a prospective one, which would provide relief to those actually harmed without requiring the actual participation of all.

This court faced the issue of representative standing by EDF previously in *Environmental Defense Fund v. Virginia State Water Control Board*, 19 Va. Cir. 307 (1990). Those cases, however, dealt with appeals to case decisions. The letter opinion explicitly stated that the decisions complained of were not rules or regulations. An appeal of a case decision differs from that of a rule or regulation in the breadth of its applicability. A case decision is

a response to a particular party's challenge to or request for agency action. Typically, the party is an applicant or permittee, and the case decision will affect whether that party may pursue some specified course of action. Rules or regulations, such as the water standard at issue here, on the other hand, set statewide guidelines, requirements, or standards affecting many more entities and individuals, making the category of "persons affected" and thus with standing to appeal, correspondingly broader.

The Virginia Supreme Court has not addressed the issue of representative standing when individual members of the association would have standing in their own right. *Virginia Beach Beautification Comm. v. Board of Zoning*, 231 Va. 415, 344 S.E.2d 899 (1986), has been cited by the defendants as precedent; however, since there is no indication of any of the membership there having standing to appeal that zoning decision in the members' own right, it is not analogous to this case. The Court has mentioned in passing that a plaintiff may bring a declaratory judgment proceeding "either in his own right or in a representative capacity." *Henrico County v. F. & W., Inc.*, 222 Va. 218, 278 S.E.2d 859 (1981); *see also, Lynchburg Traffic Bureau v. Norfolk & Western Ry.*, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966) (quoting 67 C.J.S., *Parties*, § 6, at p. 899). No elaboration was made about what would constitute an appropriate representative capacity. At any rate, the court has articulated no policy against representative standing. Since EDF has met those tests established by the United States Supreme Court, and this court can think of no policy that would be served by denying standing to EDF on these facts, it will be recognized by this court as having standing to participate.

Next, the court must decide the merit of the motions based on the appellees' assertions that appellants fail to state a claim.

The Board argues that it is not required to adopt standards which permit what it refers to as EDF's "absolutist" uses of the state's water. It suggests that EDF's petition complains that the Board failed to adopt a standard that absolutely protected the waters and would allow the appellants the ability to use the waters for all purposes.

But, that is not the appellants' complaint. They state the issue quite succinctly. "The issue if whether

the Board may use economic and technological consideration as the *sole* basis for standard, or whether it must set its standards based on the attainment of stream uses with economic and technological issues being considered." *Brief in Opposition to Water Control Board and Intervenors Chesapeake Corporation, et al., Motions to Dismiss*, p. 15. The court's interpretations of the petition is consistent with that just cited.

Appellants do not argue an absolutist standard position. Instead, they say that the Water Control Law requires that the Board adopt standards that will achieve the purposes found in Va. Code Ann. § 62.1-44.2. Among the factors the Board must consider are the "economic and social costs and benefits." Va. Code Ann. § 62.1-44.15(3a). What appellants contend is that "economic and social costs and benefits" were the *only* factors considered by the Board. If that allegation is true, then the Board's standard would appear to be inconsistent with the statutory mandates and the appellants should prevail. They have stated a claim on which relief can be granted. The Board's motion to dismiss must be overruled.

The court next addresses the appellants' motion for summary judgment. It can be decided without consideration of its merits by considering the posture of the case. Motion for summary judgment is available only where the parties are at issue and there are no facts genuinely in dispute. Rules 2A:5, 2:21.

Here, the parties are not at issue. The Board and the Intervenors have simply tested the legal sufficiency of the petition for appeal. To the extent factual allegations are taken as true for that purpose, they are not taken as true for summary judgment, as the issues are not yet joined. Accordingly, summary judgment must be denied.

In summary, the Board's motion to dismiss and the appellants' motion for summary judgment will be overruled. The Board and the intervenors will be given ten days from the date of the order implementing this decision within which to file any responses to the petition for appeal.