COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Clements
Argued at Richmond, Virginia


CHIPPENHAM & JOHNSTON-WILLIS
 HOSPITALS, INC.
                                              OPINION BY
v.   Record No. 3075-00-2              JUDGE LARRY G. ELDER
                                          OCTOBER 9, 2001
E. ANNE PETERSON, M.D.,
 STATE HEALTH COMMISSIONER,
 BON SECOURS-RICHMOND HEALTH SYSTEM, INC.,
 BON SECOURS-STUART CIRCLE HOSPITAL, INC. AND
 BON SECOURS-ST. FRANCIS MEDICAL CENTER, INC.


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
               James W. Haley, Jr., Judge Designate

          Robert T. Adams (Thomas J. Stallings;
          McGuireWoods, on briefs), for appellant.

          Roscoe C. Roberts, Assistant Attorney General
          (Mark L. Earley, Attorney General; Ashley L.
          Taylor, Jr., Deputy Attorney General; Jane D.
          Hickey, Senior Assistant Attorney General, on
          brief), for appellee E. Anne Peterson, M.D.,
          State Health Commissioner.

          Matthew D. Jenkins (Mark S. Hedberg; Hunton &
          Williams, on brief), for appellees Bon
          Secours-Richmond Health System, Inc., Bon
          Secours-Stuart Circle Hospital, Inc. and Bon
          Secours-St. Francis Medical Center, Inc.


     Chippenham and Johnston-Willis Hospitals, Inc.,

(Chippenham) appeals from a circuit court ruling affirming the

decision of E. Anne Peterson, the State Health Commissioner,

(the Commissioner).  In that decision, the Commissioner

concluded that Chippenham was not a "person showing good cause,"

as that term is defined in Code § 32.1-102.6(D), and, thus, was ineligible to participate in the informal fact finding conference held on the application of Bon Secours-Richmond Health Systems, Inc., Bon Secours-Stuart Circle Hospital, Inc., and Bon Secours-St. Francis Medical Center, Inc., (Bon Secours) for a certificate of public need to construct a new hospital in Chesterfield County.  On appeal, we hold that Chippenham demonstrated at least one substantial material mistake of law in the report submitted to the Commissioner by the local health planning agency charged with review of the application.  Thus, we hold the Commissioner erroneously denied Chippenham's petition to participate in the application process as a "person showing good cause," and we reverse and remand to the circuit court with instructions to remand the matter to the Commissioner and order her to reverse her good cause determination and to conduct further proceedings consistent with this opinion.

I.

BACKGROUND

On July 1, 1999, Bon Secours applied to the State Department of Health for a certificate of public need (COPN) to build a new hospital in Chesterfield County, St. Francis Medical Center (St. Francis), intended to replace Stuart Circle Hospital (Stuart Circle), located in the City of Richmond.  Following a public hearing on the application, the Central Virginia Health Planning Agency (CVHPA), the local health planning agency

charged by Code § 32.1-102.6 to conduct an initial review of the application, recommended conditional approval. However, during simultaneous review, the Division of Certificate of Public Need (DCOPN) of the State Department of Health (Department), the Commissioner's professional health planning staff, recommended denying the COPN application because it concluded, inter alia, that the application did not satisfy the State Medical Facilities Plan (SMFP).

The Department scheduled an informal fact finding conference pursuant to the Virginia Administrative Process Act (VAPA), Code § 9-6.14:11. Chippenham, by counsel, petitioned the Commissioner to allow it to participate in the conference as "a person showing good cause" pursuant to Code § 32.1-102.6. The Commissioner concluded that Chippenham did not establish good cause and refused Chippenham's request.

Chippenham appealed the "good cause" determination to the circuit court.[1] During the hearing on that issue, counsel for the Commissioner conceded that Bon Secours' application for St. Francis was not consistent with the provisions of the SMFP setting minimum occupancy rate requirements for replacing a hospital on a non-contiguous site and limiting the ability of a

---

[1] The Commissioner also granted conditional approval to Bon Secours' COPN application. Because the Commissioner held Chippenham did not establish good cause and the circuit court affirmed, Chippenham lacked standing to appeal the issuance of the COPN. See Tidewater Psychiatric Inst., Inc. v. Buttery, 8 Va. App. 380, 383-84, 382 S.E.2d 288, 290 (1989).

new hospital to locate within a ten-mile radius of existing hospitals whose occupancy rates did not meet those same minimum standards. Counsel for the Commissioner agreed that the demonstrated annual occupancy rate for medical/surgical beds at Stuart Circle was less than one-half the rate stated by the SMFP and that two existing hospitals within eight miles of the site proposed for St. Francis had underutilized beds. Counsel argued, however, that the Commissioner had the discretion to deviate from the SMFP based on projected future need and consideration of all the circumstances. The circuit court acknowledged the deficiency in the occupancy rates and proximity to other underutilized beds but concluded that Chippenham demonstrated no "substantial mistake of fact or law . . . in the report submitted by the [CVHPA]" and that the Commissioner acted within her discretion in concluding that Chippenham failed to demonstrate good cause.

Chippenham timely appealed the good cause determination to this Court.

## II.

## ANALYSIS

On appeal of an agency decision, "[t]he sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind

necessarily would come to a different conclusion."

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).  In making this determination, "the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted."  Id.

On appeal of an agency's determination on issues of law, the standards differ.  "'If the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law,'" the court need not defer to the agency's interpretation.  Id. at 243-44, 369 S.E.2d at 8 (quoting Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 914-15 (3d Cir. 1981)).

> However, where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . "'judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'"

Id. at 244, 369 S.E.2d at 8 (quoting Va. Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (quoting Schmidt v. Bd. of Adjustment, 88 A.2d 607, 615-16 (N.J. 1952))).

> Under Virginia's Health Care Planning law, before certain projects may be commenced, a medical care facility shall first obtain a [COPN] issued by the Commissioner.  The Commissioner must determine that a public need for the project has been demonstrated[,] and any decision to issue a [COPN] must be consistent with the most recent applicable provisions of the State Health Plan (SHP) and the State Medical Facilities Plan (SMFP). . . .
> . . . .  For a [COPN] to be consistent with the SHP and SMFP means "in harmony with . . . or in general agreement with."

Id. at 245-46, 369 S.E.2d at 8-9 (quoting Roanoke Mem. Hosps. v. Kenley, 3 Va. App. 599, 606, 352 S.E.2d 525, 529 (1987)); see also Code § 32.1-102.3(A) (providing that "[a]ny decision to issue . . . a [COPN] shall be consistent with the most recent applicable provisions of the [SMFP]" (emphasis added)).

> The [SHP and the related SMFP are] planning and development blueprint[s] for the health activities of the Commonwealth. . . .  The [SHP and SMFP] . . . do[] not bind the Department and the Commissioner to act in accordance therewith.  Code § 32.1-102.3 does, however, limit the authority of the Commissioner with respect to the issuance of a [COPN].  First, a decision to issue or approve the issuance of a certificate must be consistent with the most recent applicable provisions of the [SHP and SMFP].  Second, in determining whether such public need for a project has been demonstrated, the Commissioner must consider the twenty criteria set forth in Code § 32.1-102.3(B).

Roanoke Mem. Hosps., 3 Va. App. at 605, 352 S.E.2d at 528-29

(emphasis added).[2]

_____

[2] The statute provides as follows:

> A.  No person shall commence any project without first obtaining a certificate issued by the Commissioner.  No certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated. If it is determined that a public need exists for only a portion of a project, a certificate may be issued for that portion and any appeal may be limited to the part of the decision with which the appellant disagrees without affecting the remainder of the decision.  Any decision to issue or approve the issuance of a certificate shall be consistent with the most recent applicable provisions of the State Medical Facilities Plan; however, if the Commissioner finds, upon presentation of appropriate evidence, that the provisions of such plan are not relevant to a rural locality's needs, inaccurate, outdated, inadequate or otherwise inapplicable, the Commissioner, consistent with such finding, may issue or approve the issuance of a certificate and shall initiate procedures to make appropriate amendments to such plan.
> B.  In determining whether a public need for a project has been demonstrated, the Commissioner shall consider [twenty enumerated factors, including]:
> 1.  The recommendation and the reasons therefor of the appropriate health planning agency [and]
> 2.  The relationship of the project to the applicable health plans of the Board and the health planning agency. . . .

Code § 32.1-102.3 (emphasis added); see also 12 VAC 5-220-160; 12 VAC 5-220-270.

"If the Commissioner finds that the provisions of either [the SHP or SMFP] are inaccurate, outdated, inadequate, or otherwise inapplicable, the Commissioner may nevertheless issue a [COPN] and institute procedures to amend the plan appropriately." Johnston-Willis, Ltd., 6 Va. App. at 245, 369 S.E.2d at 9 (citing Code § 32.1-102.3(A)). Where the Commissioner does not make an express finding that either of the plans is "inaccurate, outdated, inadequate, or otherwise inapplicable," the exception does not apply. Roanoke Mem. Hosps., 3 Va. App. at 601, 352 S.E.2d at 526.

In this appeal, Chippenham does not directly contest the decision to issue the COPN because it lacks standing to do so. See supra footnote 1. Rather, it challenges the Commissioner's denial of its request to participate in the proceedings as a "person showing good cause," as that term is defined in Code § 32.1-102.6. An entity may show "good cause" by establishing the existence of "a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning agency[, the CVHPA,]" or "significant relevant information not previously presented at and not available at the time of the public hearing." Code § 32.1-102.6(G).

In reviewing the Commissioner's conclusion that Chippenham failed to establish good cause, we must consider the relationship between the code's direction that issuance of a

COPN shall be consistent with the SMFP, Code § 32.1-102.1(A);

see Roanoke Mem. Hosps., 3 Va. App. at 606, 352 S.E.2d at 529,

and various portions of the SMFP, which provide that a specific

criterion "should" or "should not" be met, e.g., 12 VAC

5-240-30, 12 VAC 5-240-50.[3]  We addressed this relationship in

Roanoke Memorial Hospitals, which involved the licensure of new

"megavoltage radiation therapy unit[s]" (megavoltage unit(s)).

3 Va. App. at 603-08, 352 S.E.2d at 527-30.  The relevant

provision of the SMFP[4] stated that "'there should be no

additional megavoltage units opened unless each existing

megavoltage unit in a given medical services area is performing

at least 6,000 treatment visits per year.'"  Id. at 605, 352

S.E.2d at 529.  We held that "use of the word 'should' in the

context of the [SMFP] was intended to confer an appropriate

amount of discretionary authority in the administrative body."

Id. at 606, 352 S.E.2d at 529.  Confronted with the argument

---

[3] The requirement of Code § 32.1-102.3(A) that a decision to issue a COPN must be consistent with the SMFP applies directly only to the decision made by the Commissioner.  However, if a report of the CVHPA or DCOPN recommends that the Commissioner issue a COPN when such issuance would be inconsistent with the SMFP, the report contains a "substantial material mistake of fact or law," and the entity demonstrating such a mistake must be permitted to participate in the proceedings as a "person showing good cause" under Code § 32.1-102.6.

[4] Roanoke Memorial Hospitals actually involved consistency with the SHP rather than the SMFP.  However, the relevant provisions of the SHP have been superceded by the SMFP, and Code § 32.1-102.3 requires consistency with "the most recent applicable provisions of the [SMFP]."

that "the words 'consistent with' as used in Code § 32.1-102.3(A) contradict[ed] any notion of flexibility[] and demand[ed] that the Commissioner's ruling accord exactly with the requirements of the Code," we held that "'consistent with'" means "'compatible with' . . . or 'in general agreement with'" rather than "'exactly alike' or 'the same in every detail.'" Id. Thus, we concluded,

> [b]oth the Code and the [SMFP] recognize that the Commissioner will exercise some discretion in issuing a [COPN] to determine whether [her] decision is "consistent with" the standard in the [SMFP], including the proviso that there "should be no additional megavoltage units opened, unless each existing megavoltage unit in a given medical services area is performing at least 6,000 treatment visits per year."

Id.

In applying this standard to the facts of that case, we concluded data showing that one megavoltage unit fell well below the 6,000-visits-per-year standard did not prevent the data as a whole from being found "consistent with" the SMFP. Id. at 607, 352 S.E.2d at 529. The average number of annual visits for all existing treatment units in the medical services area combined was at least 97% of the 6,000-visits standard and was expected to exceed that standard in future years. Id. at 607, 352 S.E.2d at 530. Under those facts, we held the Commissioner's decision to issue the COPN was "consistent with" the SMFP. Id. at 607-08, 352 S.E.2d at 530.

Thus, we give deference to the CVHPA's determination, implicit in its recommendation that the Commissioner issue the requested COPN, that issuance of the COPN was consistent with the SMFP. We may reverse the good cause determination only if we conclude the CVHPA's recommendations were arbitrary and capricious in light of the consistency requirement or that its findings of fact were not supported by substantial evidence.

The SMFP provides that:

> No proposal to replace acute care inpatient beds off-site, to a location not contiguous to the existing site, should be approved unless: (i) off-site replacement is necessary to correct life safety or building code deficiencies; (ii) the population served by the beds to be moved will have reasonable access to the acute care beds at the new site, or the population served by the facility to be moved will generally have comparable access to neighboring acute care facilities; and (iii) the beds to be replaced experience an average annual utilization of 85% for general medical/surgical beds and 65% for intensive care beds in the relevant reporting period.

12 VAC 5-240-30(B)(1).

The CVHPA conceded in its October 8, 1999 report that "the beds to be replaced do not meet the 85% medical/surgical or the 65% intensive care occupancy standard." Based on an occupancy rate of 41.2% for medical/surgical beds and 51.6% for intensive care beds during the 1998 reporting period, the CVHPA concluded that the 85%/65% occupancy standard would "justify the relocation of [only] 65 medical/surgical and 7 intensive care

beds." It opined, however, that the "development of a hospital of 72 beds likely would not be feasible and may not meet the demand of the proposed service area into the future should [Bon Secours' St. Francis Medical Center] capture a significant market share of the relatively less competitive proposed service area." "Based on the SMFP methodology" and given an existing inventory of 2,449 general medical/surgical beds in Planning District 15 in 1998, it projected a surplus of 918 general medical/surgical beds through 2004. Although acknowledging "no need for additional beds in the planning district," the CVHPA projected a need for additional beds in St. Francis' proposed service area by 2003, opining that "the 130 beds proposed to be relocated to the [St. Francis] site could meet some of the potential demand . . . at a more convenient location" and "would be well utilized by the area." The CVHPA reached a similar conclusion in regard to intensive care beds, noting an expected surplus in the planning district but predicting the likelihood of an increased need in the proposed service area, opining that the new intensive care beds also likely would be "well utilized."

Following Chippenham's petition to demonstrate good cause, the Department's hearing officer concluded that the CVHPA's deviation from the 85%/65% occupancy standard did not constitute a substantial, material mistake of fact or law because the CVHPA "properly applied the standards" but concluded that "the

development of a 72-bed hospital would not be feasible and may not meet the demand of the proposed service area into the future."  The Commissioner adopted this rationale without elaboration.

The circuit court concluded that

> the Commissioner's interpretation of Va. Code § 32.1-102.3 as giving [her] discretion in determining the degree to which a COPN application must be, or may not be, consistent with the SMFP is a correct interpretation of that statute.  Moreover, it is only one of the statutory factors which must be considered in a decision to grant or deny the application.  There was no mistake of law.  Accordingly, that interpretation is not arbitrary and capricious.

We conclude, pursuant to our holding in Roanoke Memorial Hospitals, that the CVHPA's recommendation for issuance of the COPN need not be supported by average annual occupancy data which exactly meets or exceeds the 85%/65% occupancy standard of the SMFP.  3 Va. App. at 606-08, 352 S.E.2d at 529-30.  Rather, the report does not contain a substantial material mistake of law if it recommends the Commissioner exercise "some discretion," an "appropriate amount," in concluding the issuance of the COPN is "consistent with" the SMFP.  Id. at 606, 352 S.E.2d at 529.  Here, however, the record demonstrated an undisputed average annual occupancy rate of 41.2% for Stuart Circle's 135 medical/surgical beds, less than one-half of the SMFP's standard of 85%.  Although Stuart Circle did not seek to

replace all 135 beds and the CVHPA recommended approval of 122, use of these figures yields an average annual occupancy rate of 46%, still significantly below the SMFP's 85% standard. Thus, we hold the CVHPA's report recommending issuance of the COPN contained a substantial material mistake of law and, therefore, was arbitrary and capricious because its recommendation that the Commissioner issue the COPN under those circumstances was not consistent with the SMFP.

Because we hold the CVHPA's recommendation to the Commissioner to approve the COPN, despite an average annual occupancy rate of 46% for general medical/surgical beds which is not consistent with the SMFP's standard of 85%, constituted a material mistake of law, we need not consider Chippenham's remaining assignments of error.[5]

---

[5] Thus, we do not consider whether the CVHPA's recommendation to the Commissioner to approve the COPN based on an average annual occupancy rate of 51.6% for intensive care beds as compared to the SMFP's standard of 65% constituted a material mistake of law. We also need not consider Chippenham's assignments of error regarding whether the CVHPA's deviation from the combined ten-mile/minimum average occupancy standard constituted a substantial material mistake of fact or law; whether the CVHPA's failure specifically to mention one of the COPN program's guiding principles was a material mistake of fact or law; whether the CVHPA's acceptance of Bon Secours' representations regarding its primary and secondary service areas constituted a material mistake of fact; and whether the fact that Bon Secours held an option to purchase land for the construction of a hospital at an alternate site in Chesterfield County was information "significant" and "relevant" within the meaning of Code § 32.1-102.6.

Accordingly, we hold the Commissioner erred in concluding Chippenham was not entitled to participate in the application proceeding as "a person showing good cause."  Therefore, we reverse and remand to the circuit court with instructions to remand the matter to the Commissioner and order her to reverse her good cause determination and to conduct further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>