## The Honorable L. Douglas Wilder, Governor of the Commonwealth

### v.

## The Attorney General of Virginia

Record No. 930413

January 7, 1994

Present: All the Justices

120

*Kenneth C. Bass, III (Benjamin R. Civiletti; James A. Dunbar; Venable, Baetjer & Howard,* on briefs), for appellant.

*R. Claire Guthrie, Chief Deputy Attorney General (Stephen D. Rosenthal, Attorney General; Gail Starling Marshall, Deputy Attorney General; Peter R. Messitt, Assistant Attorney General; Julie A. Stanley, Assistant Attorney General,* on brief), for appellee.

*Amicus Curiae:* (Ralph L. Axselle, Jr.; Walter H. Ryland; Williams, Mullen, Christian & Dobbins, on brief), in support of appellee.

*Amicus Curiae:* (Alexander W. Bell, on brief), in support of appellee.

*Amicus Curiae:* (John A. Gibney, Jr., Lee Fisher, Attorney General of Ohio; Nancy J. Miller, Chief Counsel; Loren L. Braverman, Deputy Chief Counsel; Andrew I. Sutter, Assistant Attorney General; Andrew S. Bergman, Assistant Attorney General; Shuford, Rubin, Gibney, on brief), in support of appellee.

JUSTICE HASSELL delivered the opinion of the Court.

Code § 2.1-122 permits the Governor of Virginia, under certain circumstances, to employ "special counsel" to act instead of the Attorney General. The narrow issue we consider in this appeal is whether under the facts presented, counsel appointed by the Governor to provide comprehensive legal representation to a state agency constitutes special counsel within the intendment of Code § 2.1-122.

The facts relevant to our resolution of this controversy are not in dispute. The Office of the Attorney General provides regular legal representation to the Commonwealth, her agencies and officers. On December 10, 1992, Governor L. Douglas Wilder informed Attorney General Mary Sue Terry, by letter, that he intended to appoint special legal counsel to represent the Virginia Retirement System pursuant to Code § 2.1-122(a). This letter declares, in part:

I have stated previously my great concern as to whether your office can now meet its obligation to provide appropriate legal representation to the Virginia Retirement System. I have said this publicly as well.

From the onset, recent circumstances presented you with a number of legal entanglements due to the potential for conflicts. In your role as Attorney General you have set out to represent individual members of the Virginia Retirement System Board in their practices relative to the Freedom of Information Act. You have also led an investigation which resulted in your drawing and making public certain legal and administrative policy conclusions about those same sensitive matters. Much of this was aired publicly prior to the conclusion of your investigation.

It has become only too apparent that the results of these acts of "representation" may be used in an adverse manner against individual members of the Board and with legal predicates which are based upon your very own policy declarations. In essence, you have condemned the client and then purport to rep-

resent the same. The attorney-client privilege is thereby breached.

. . . .

In such circumstances, the Code of Virginia recognizes the importance of authorizing the Governor to intervene by certifying the need for independent counsel. I do so certify such a need for the Virginia Retirement System pursuant to [Code §] 2.1-122(a).

The Attorney General forwarded a letter to the Governor dated December 11, 1992 in which she disagreed strongly with the Governor's assertion that a conflict of interests existed. She denied any acts of ethical impropriety, and challenged the Governor's authority to appoint special legal counsel for the Virginia Retirement System.

The Governor sent another letter to the Attorney General dated December 21, 1992 that states, in part:

This letter, together with my December 10 letter, will serve . . . as my exemption order pursuant to [Code §] 2.1-122(a). This letter has the full force and effect of a formal Executive Order regardless of its form.

. . . .

As my December 10 letter indicates, there has been a breakdown of the attorney-client relationship between your office and the Virginia Retirement System which, and in my judgment, renders your office unable to render effective legal representation to [the Virginia Retirement System] and requires the appointment of other counsel for [the Virginia Retirement System]. At the root of my conclusion is the fact that you decided to make your criticisms and conclusions publicly rather than maintaining the confidences of your clients.

. . . .

I anticipate that [the Virginia Retirement System] will continue to need independent counsel in the roles described above until such time as the conflicts between your office and [the

Virginia Retirement System] have abated and your office will once again be able to provide legal representation to [the Virginia Retirement System]. I anticipate that that period will run at least until the termination of [certain] litigation, but I will be glad to revisit the issue at such earlier time as you may suggest.

The Attorney General initiated the present action by filing a bill of complaint against the Governor. The Attorney General sought, among other things, a declaration that Code § 2.1-122 does not authorize the Governor to appoint special counsel to provide comprehensive legal services to the Virginia Retirement System. The Governor filed responsive pleadings and asserted that his appointment of special counsel is consistent with and authorized by Code §§ 2.1-121 and 2.1-122.

Code § 2.1-121 states, in relevant part:

All legal service in civil matters for the Commonwealth, the Governor and every state department, institution, division, commission, board, bureau, agency, entity, official, court or judge, including the conduct of all civil litigation in which any of them are interested, shall be rendered and performed by the Attorney General, except as hereinafter provided in this chapter and except for any litigation concerning a justice or judge initiated by the Judicial Inquiry and Review Commission. No regular counsel shall be employed for or by the Governor or any state department, institution, division, commission, board, bureau, agency, entity or official.

Code § 2.1-122 states, in relevant part:

No special counsel shall be employed for or by the Governor or any state department, institution, division, commission, board, bureau, agency, entity, official, justice of the Supreme Court, or judge of any circuit court or district court except in the following cases:

(a) Where because of the nature of the service to be performed, the Attorney General's office is unable to render same, the Governor after issuing an exemption order stating with particularity the facts and reasons upon which he bases his conclusion that the Attorney General's office is unable to render such

service, may employ special counsel to render such service as the Governor may deem necessary and proper.

The trial court conducted a hearing and issued a decree that the Governor's letters dated December 10, 1992 and December 21, 1992 "reflect and demonstrate his intention to replace the Office of the Attorney General as 'regular counsel' for the Virginia Retirement System, in conflict with [Code §] 2.1-121" and that Code § 2.1-122(a) does not authorize the Governor to replace the Office of the Attorney General as regular counsel for a state agency. We awarded the Governor an appeal.

The Governor contends that Code § 2.1-122(a) permits him to appoint special counsel if he issues an exemption order that states with particularity the facts and reasons upon which he bases his conclusion that the Office of the Attorney General is unable to provide legal services to a state agency. The Governor asserts that his powers conferred by Code § 2.1-122(a) are not substantively limited, except by the arbitrary and capricious standard applied in the course of judicial review.

The Attorney General argues, however, that the trial court made a finding of fact "that the Governor acted to employ counsel to replace the Office of the Attorney General as counsel for the [Virginia Retirement System] 'in all representative capacities' " and that this factual finding is binding on appeal. Furthermore, the Attorney General argues that the appointment of counsel to act in all representative capacities constitutes the appointment of regular counsel that is prohibited by Code § 2.1-121.

Contrary to the assertions of the Attorney General, the trial court's "finding" that the Governor appointed regular counsel is not merely a finding of fact, but a mixed question of law and fact, and, therefore, is not binding on this Court. *See Richmond Newspapers, Inc.* v. *Gill,* 224 Va. 92, 95, 294 S.E.2d 840, 841 (1982); *Clinchfield Carbocoal Corp.* v. *Kiser,* 139 Va. 451, 456, 124 S.E. 271, 273 (1924). Consistent with the Attorney General's assertions, however, we do not resort to the rules of statutory interpretation where, as here, language contained in a statute is free from ambiguity. *Barr* v. *Town & Country Properties, Inc.,* 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990); *Marsh* v. *City of Richmond,* 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987). Thus, we will look at the plain language contained in Code §§ 2.1-121 and 2.1-122 and apply the language contained therein.

Code § 2.1-121 prohibits the Governor, state agencies, entities, and officials from employing "regular counsel." However, Code

§ 2.1-122(a) confers a grant of power upon the Governor to employ "special counsel" in certain limited instances. The Governor may only exercise this grant of power when, because of the nature of the legal services to be performed, the Office of the Attorney General is "unable" to perform those legal services. As a condition of the exercise of this grant of power, the Governor is required to issue an exemption order that states, with particularity, the facts and reasons underlying his decision that the Office of the Attorney General is unable to render legal services.

In his letters dated December 10, 1992 and December 21, 1992, the Governor asserted that "there has been a breakdown of the attorney-client relationship" between the Office of the Attorney General and the Virginia Retirement System which, in the Governor's judgment, rendered the Office of the Attorney General unable to provide effective legal representation to that agency. The Governor also was of opinion that a conflict of interests existed that would impair the ability of the Office of the Attorney General to represent the Virginia Retirement System. Therefore, the Governor appointed certain private attorneys to act as special counsel who would provide general representation to the Virginia Retirement System "until such time as the conflicts between [the Office of the Attorney General and the Virginia Retirement System] have abated." Additionally, the Governor stated that special counsel would probably be employed until the termination of certain litigation, but he would "be glad to revisit the issue at such earlier time as [the Attorney General] may suggest."

■ We hold that under the facts and circumstances of this case, the Governor's appointment of "special counsel" did not contravene Code § 2.1-122(a). The plain import of the term "special counsel" is counsel independent of the Office of the Attorney General. The scope of the appointment of special counsel must, however, be limited by objective parameters specified within the Governor's exemption order because such appointment must not conflict with Code § 2.1-121, which prohibits the appointment of regular counsel. Here, even though the special counsel appointed by the Governor will provide comprehensive legal services to the Virginia Retirement System, the scope of the appointment is limited in duration until such time that the purported conflict of interests abates.

■ We recognize that the Attorney General vigorously disputes the existence of any conflict of interests between her office and the Virginia Retirement System. However, in this instance, it is not the province of the judicial branch of government to question the motives or judgment of the head of the executive branch. Rather, our inquiry is

limited to whether the Governor exceeded the scope of authority vested in his office by Code § 2.1-122(a) and whether, in the exercise of that grant of power, the Governor's acts were arbitrary and capricious. Under the specific facts and circumstances of this case, as delineated with the required particularity in the Governor's letters to the Attorney General, we hold that the Governor's acts were not arbitrary and capricious.

The Attorney General argues that, as a matter of law, the Office of the Attorney General was not "unable" to render legal services to the Virginia Retirement System. The Attorney General says that the Governor relied upon "potential for conflicts; lack of faith in the possibilities for objective [legal] representation; and breakdown of the attorney-client relationship" to support his conclusion that the Office of the Attorney General was "unable" to serve as counsel to the Virginia Retirement System. The Attorney General states that the word "unable" does not encompass any of these reasons because "unable" and "conflict of interests" are mutually exclusive terms under subsection (d) of Code § 2.1-122, which provides:

In cases where the Attorney General certifies to the Governor that it would be improper for the Attorney General's office to render legal services due to a conflict of interests, or that he is unable to render certain legal services, the Governor may employ special counsel or other assistance to render such services as may be necessary.

Thus, she argues, "unable" in Code § 2.1-122(a) cannot include a conflict of interests because "unable" in Code § 2.1-122(d) excludes "conflict of interests," and the meaning of "unable" must be the same in each subsection.

■ We disagree with the Attorney General's assertions. The Attorney General's analysis is premised upon phrases that are used in different contexts, and in different statutory provisions, which prescribe separate and distinct limited grants of power to the Governor. The exercise of the powers in Code § 2.1-122(a) is initiated by the Governor whereas the exercise of the powers in Code § 2.1-122(d) is initiated by certification of the Attorney General. In Code § 2.1-122(a), the word "unable" is part of a phrase that refers to "the nature of the service to be performed" by the special counsel and permits consideration by the Governor of conflict of interests. However, the word "unable" in Code § 2.1-122(d) is narrower in scope and deals merely with "certain legal services," the subject of conflict of interests

having already been covered in the first clause of that subsection. Accordingly, we reject the Attorney General's contention that the word "unable" and the phrase "conflict of interests" are mutually exclusive in Code § 2.1-122.

■ Finally, we find no merit in the Attorney General's argument that Code § 2.1-122(a) may be unconstitutional because, she contends, it "permits a governor to remove duties and powers from an attorney general and to assume those same powers himself." Initially, we observe that even though the Attorney General asserts that Code § 2.1-122(a) may be unconstitutional, she fails to identify the specific constitutional provision that she claims may be implicated.

■ Article V, § 15 of the Constitution of Virginia unequivocally permits the General Assembly to prescribe the duties of the Attorney General and the General Assembly did so by its enactment of statutes such as Code § 2.1-121. Contrary to the assertion of the Attorney General, the Governor did not remove her from office when he exercised the limited grant of power conferred upon him by Code § 2.1-122(a). Rather, utilizing that grant of power, he appointed special counsel to represent an agency of the Commonwealth because, in his judgment, the Attorney General was unable to act.

In view of our holding that Code § 2.1-122(a) authorizes the Governor to appoint special counsel to provide general representation to the Virginia Retirement System in this case, we need not consider the remaining assignments of error. Accordingly, we will reverse the judgment of the trial court and dismiss the bill of complaint.

*Reversed and dismissed.*

JUSTICE WHITING, dissenting.

Although I agree with much of the majority opinion, I cannot agree with its conclusion.

I agree with the majority: (1) that this case can be decided by applying the plain meaning of the statutes involved; (2) that, with certain listed exceptions, Code § 2.1-121 prohibits the Governor from appointing "regular counsel" for the Virginia Retirement System (the agency); and (3) that Code § 2.1-122(a) authorizes the Governor to employ "special counsel" for a state agency upon issuing the required exemption order. However, I disagree with the conclusion that counsel who, in the majority's words, provide[s] "comprehensive legal representation" to a state agency is "special counsel" within the meaning of Code § 2.1-121(a).

Since the statute is clear and unambiguous, I would apply its plain meaning and intent. *Frazier v. City of Norfolk,* 234 Va. 388, 391-92, 362 S.E.2d 688, 690 (1987). The adjective "special" is defined in pertinent part as "confined to a definite field of action: designed or selected for a particular purpose, occasion, or other end: limited in range." Webster's Third New International Dictionary 2186 (1986). Applying the plain meaning of the adjective "special," I conclude that counsel who provides "comprehensive legal representation" to the agency cannot be deemed "selected for a particular purpose, occasion or other end."

And this plain meaning is consistent with the context of other statutory language. The statute requires that "[a]ll legal service in civil matters for the Commonwealth [and every state agency] shall be rendered and performed by the Attorney General." Code § 2.1-121. The relevant exceptions focus on specific instances when the Attorney General could not or should not act, such as when (1) the Governor certifies that the Attorney General is unable to act "because of the *nature of the service* to be performed," Code § 2.1-122(a) (emphasis added); (2) it is impractical or uneconomical for the Attorney General's office to render legal services, Code § 2.1-122(b) and -122(c); and (3) the Attorney General certifies an inability to render "certain legal services" due to a conflict of interests or an inability to render such services.

In my opinion, these exceptions confine special counsel's representation to discrete and limited areas. Indeed, as the majority points out, the exception relied on requires that "[t]he scope of the appointment of special counsel must, however, be limited by objective parameters specified within the Governor's exemption order." Therefore, I conclude that the exceptions authorize the Governor and the Attorney General to employ special counsel *only* in particular legal matters or cases in which the Attorney General could or should not act.

On the other hand, the majority defines "special counsel" as one who is independent of the Attorney General and serves for a limited period. I agree that if, "because of the nature of the service to be rendered," the Governor certifies the Attorney General's inability to act, special counsel would be independent of the Attorney General in the discrete area of his or her representation. However, the independence of special counsel does not address the "limited range" of that representation.

Further, I do not think that fixing a limited period for the employment of the appointee transforms that "regular" or "general" counsel into "special" counsel, as the majority holds.

For all these reasons, I would hold that the Governor exceeded the scope of the authority vested in him by Code § 2.1-122(a). Because of this conclusion, I address the Governor's other assignments of error.

I find no merit in the Governor's contention that § 4-5.04(a)(1) of the Appropriations Act* vests him with authority independent of Code § 2.1-122(a) to replace the Attorney General as regular counsel for the agency. In my opinion, this section of the Appropriations Act merely (1) defines the relationship of the special counsel to the Office of the Attorney General, and (2) designates the sources for payment of special counsel appointed by the Governor under the provisions of Code § 2.1-122(a). I do not think that the Appropriations Act provides an authorization separate from Code § 2.1-122(a), as the Governor contends.

Finally, I think that the trial court erred in permitting a witness to state his understanding of some of the statutes involved. *See Funkhouser v. Spahr,* 102 Va. 306, 311-12, 46 S.E. 378, 380 (1904) (constitutional convention members' understanding of particular constitutional provision not proper consideration). However, I would conclude that the Governor was not prejudiced because (1) the statute is not ambiguous and needs no interpretation, *Frazier,* 234 Va. at 391-92, 362 S.E.2d at 690, and (2) the trial court did not make this testimony the basis of its conclusion. It merely noted that the testimony confirmed its conclusions.

For all these reasons, I would affirm the judgment in this case.

---

* The Appropriations Act contains the following proviso to the general requirement that the Attorney General appoint all special counsel. It reads as follows:

[I]f the Governor certifies the need for independent legal counsel for any Executive Department agency, such agency shall be free to act independently of the Office of the Attorney General, in regard to selection, and provided, further, that compensation of such independent legal counsel shall be paid from the monies appropriated to such Executive Department agency or from the monies appropriated to the Office of the Attorney General.

Acts 1992, ch. 893, § 4-5.04(a)(1) at 1987.