COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia

EPHIGENIA K. GIANNOUKOS

v.        Record No. 0457-04-2

VIRGINIA BOARD OF MEDICINE AND
 DEPARTMENT OF HEALTH PROFESSIONS

OPINION BY
JUDGE D. ARTHUR KELSEY
JANUARY 11, 2005

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

Joseph P. McMenamin (William H. Baxter II; McGuireWoods LLP,
on briefs), for appellant.

Emily O. Wingfield, Assistant Attorney General (Jerry W. Kilgore,
Attorney General; David E. Johnson, Deputy Attorney General;
Jane D. Hickey, Senior Assistant Attorney General; Howard M.
Casway, Senior Assistant Attorney General, on brief), for appellees.


The Virginia Board of Medicine wrote a letter to Dr. Ephigenia K. Giannoukos advising her

that the Department of Health Professions was obligated by federal law to report her prior

administrative adjudication to the Healthcare Integrity and Protection Data Bank.  In response to

that letter, Dr. Giannoukos filed an action in circuit court seeking appellate review under the

Virginia Administrative Process Act (VAPA), Code § 2.2-4000 *et seq*.  The circuit court dismissed

the appeal, holding the VAPA did not apply because the agency's letter regarding its own reporting

obligations under federal law did not constitute a "case decision" concerning Dr. Giannoukos.  We

agree and affirm.

I.

Dr. Giannoukos practices medicine in Delaware.  She also maintains a license to practice in

Virginia.  In 2002, after an informal hearing pursuant to Code § 2.2-4019, the Virginia Board of

Medicine found Dr. Giannoukos in violation of Code § 54.1-2910.1 and 18 Va. Admin. Code § 85-20-280, *et seq.* for failing to submit a professional profile describing her qualifications and practice. Under Virginia law, the failure to submit the required profile exposes "the licensee to disciplinary action by the Board." See 18 Va. Admin. Code § 85-20-300(A).

Prior to a formal administrative hearing, Dr. Giannoukos and the Board agreed to the entry of a consent order. In its findings of fact, the order found that Dr. Giannoukos "did not provide, within the required timeframe and in response to four (4) letters from the Board between March and September 2001, the information required by Section 54.1-2910.1 of the Code and Part VII, Practitioner Profile System (18 VAC 85-20-280 *et seq.*) of the Board's General Regulations." Acknowledging that the order affected her "license to practice medicine in the Commonwealth of Virginia," Dr. Giannoukos received a $250 fine. See Code § 54.1-2401 (authorizing Board to impose a monetary penalty upon a finding that "a respondent has violated any provision of statute or regulation pertaining to the Board").

In a cover letter to the Board enclosing the consent order, Dr. Giannoukos's counsel asked the Board not to report the consent order to the federal Healthcare Integrity and Protection Data Bank (HIPDB). The HIPDB serves as a national databank for "the reporting of final adverse actions" against health care providers, suppliers, and practitioners. 42 U.S.C. § 1320a-7e(a). The databank cannot be accessed by the public at large. Only governmental agencies and health plans may review the names on the list. See 42 U.S.C. § 1320a-7e(d); 45 C.F.R. § 61.12(a). Doctors can review their own entries, but no others. See 45 C.F.R. § 61.12(a)(3).

Under federal law, federal and state agencies "responsible for the licensing and certification of health care providers" must report to the HIPDB any "negative action or finding by such Federal or State agency that is publicly available information." 42 U.S.C.

§ 1320a-7e(g)(1)(A)(iii)(III).  An agency may be sanctioned for failing to report an adverse

action against a licensee.  See 42 U.S.C. § 1320a-7e(b)(6)(B); 45 C.F.R. § 61.7(d).

The Board entered the consent order on June 20, 2003, in lieu of a formal administrative

hearing.  Nothing in the order addressed whether the Board would later report Dr. Giannoukos's

state-law violation to the HIPDB.  Never appealed, the consent order constitutes a final, binding

agency case decision.  See Code §§ 2.2-4023, 2.2-4026.

Several months later, the Virginia Attorney General's office notified Dr. Giannoukos that it

interpreted federal law to require the consent order be reported to the HIPDB.  The executive

director of the Virginia Board of Medicine followed up with a letter to Dr. Giannoukos stating:

"Based on the advice of counsel, I understand the Department will report this order to the HIPDB

early next week.  The report will contain an appropriate explanation to present the Order in its

proper light."

In response to the Board's letter, Dr. Giannoukos filed a VAPA action in circuit court.  In

her petition for appeal, Dr. Giannoukos took issue with the Attorney General's interpretation of

federal law concerning "the legal requirements that govern reports by the Board and Department to

the HIPDB."  Alleging that federal law did not require the report, Dr. Giannoukos requested

injunctive relief forbidding the Board and the Department from reporting the consent order.

The circuit court dismissed the appeal, holding that the letter did not fall within the

definition of a "case decision" under Code § 2.2-4001 because the letter itself addressed only the

question whether the agency had a reporting duty under federal law, not whether Dr. Giannoukos

had violated any law.  As the circuit court explained:

> In the case at bar, the Director's letter does not express a factual
> determination that a party "either is, is not, or may or may not be" in
> violation of a law or regulation.  Instead the letter summarily
> communicates the Department's determination that it has a legal duty
> to report something to HIPDB.  Essentially it announces a decision
> about what the Department believes it should do rather than a

- 3 -

decision about a party's action.  For these reasons, this court finds
that the letter is not a case decision.

Dr. Giannoukos appeals to us, claiming the circuit court erred in dismissing the appeal.

II.

Under the VAPA, the circuit court reviews the agency's action in a manner "equivalent to an appellate court's role in an appeal from a trial court." J. P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997) (quoting Sch. Bd. v. Nicely, 12 Va. App. 1051, 1061-62, 408 S.E.2d 545, 551 (1991)) (internal quotation marks omitted).  "In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal." Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997) (citation omitted); Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va. App. 703, 708, 454 S.E.2d 732, 734-35 (1995).

The VAPA, however, does not vest circuit courts with appellate authority over all agency decisions.  Only those within the definition of a "case decision" fall within the scope of the VAPA's judicial review provisions.  Code § 2.2-4026.  A "case decision" means

> any agency proceeding or determination that, under laws or
> regulations at the time, a named party as a matter of past or present
> fact, or of threatened or contemplated private action, either is, is
> not, or may or may not be (i) in violation of such law or regulation
> or (ii) in compliance with any existing requirement for obtaining or
> retaining a license or other right or benefit.

Code § 2.2-4001.  At the "heart" of a case decision "is a fact determination respecting compliance with law." Kenley v. Newport News Hosp. Assoc., 227 Va. 39, 44-45, 314 S.E.2d 52, 55 (1984) (quoting reviser's note D to predecessor statute, Code § 9-6.14:4).

Under Code § 2.2-4001, the definition of a case decision focuses on the named party's alleged violation of law or entitlement to a legally cognizable right or benefit.  Except to the extent it informs this central question, the scope of the agency's legal duties is entirely beside the

- 4 -

point.[1]  In other words, a case decision represents a determination "under laws or regulations at the time" that the named party is or may be in violation of "such laws or regulations" or out of compliance with some requirement for obtaining some right or benefit.  Code § 2.2-4001.  A determination addressing only the agency's legal duties does not qualify for VAPA review.

The circuit court recognized this subtle, but critical, distinction.  As the court observed, the Board's letter to Dr. Gioannoukos merely informed her that (based on its understanding of federal law) the agency had a legal duty to report the consent order to the HIPDB.  The court acknowledged the letter represented a determination of sorts — just not one making any independent adjudication of the legality of Dr. Giannoukos's conduct.  We agree with the circuit court's reasoning.

Applied to the Board's letter, the case decision definition's reference to "such laws or regulations" could only mean the federal statutes and regulations governing the agency's reporting duties.  See 42 U.S.C. § 1320a-7e; 45 C.F.R. § 61.7.  Dr. Giannoukos had no statutory duty to report an adverse agency action, even one she concedes to be legally reportable.  The letter cannot itself be fairly characterized as an independent determination that Dr. Giannoukos violated state statutes and regulations by failing to file her professional profile with the licensing authority.  That determination had already been made, several months earlier, by the entry of a final, unappealed consent order.

---

[1] None of the Virginia cases interpreting "case decision" under the VAPA involves a determination of the agency's compliance or noncompliance with governing statutes or regulations.  See, e.g., Kenley, 227 Va. at 45, 314 S.E.2d at 56 (involving case decision which "ruled" that hospital needed a certificate of public need before performing open heart surgeries); Commonwealth v. County Utilities Corp., 223 Va. 534, 290 S.E.2d 867 (1982) (dealing with a case decision denying a septic system permit); Va. ABC Comm. v. York St. Inn, 220 Va. 310, 257 S.E.2d 851 (1979) (addressing case decision by the ABC Commission forbidding applicant from serving alcohol under certain conditions).

To Dr. Giannoukos, this reasoning is both illogical and unfair: Illogical, because the agency's federal statutory duty to report the consent order implies a determination that her violation of state law was a reportable offense. Unfair, because including her in the federal HIPDB places her, as she puts it, in the company of "frauds and cheats" — thereby exposing her to considerably more guilt-by-association than her simple (and allegedly trivial) violations of bureaucratic paperwork rules justify. We find neither assertion persuasive.

From a logical point of view, we accept that the Board — in order to determine its own reporting duties — must necessarily decide whether the consent order is a reportable event. Federal law defines a reportable event as any "negative action" against a licensee that is "publicly available information." 42 U.S.C. § 1320a-7e(g)(1)(A)(iii)(III); 45 C.F.R. § 61.7(a)(3); see also 45 C.F.R. § 61.3 (defining "[a]ny other negative action").[2] The federal definition, therefore, did not require the Board to decide whether Dr. Giannoukos violated state law. The consent order had already resolved that issue. The only thing left to do was to decide, under federal law, how to characterize the consent order: negative or non-negative, public or private.

As to the ostensible unfairness of being included on the HIPDB list, Dr. Giannoukos makes an emotively appealing point. The principal reason for the federal database appears to be an effort at exposing fraudfeasors in the medical profession. And her paperwork violation of

---

[2] See also 42 U.S.C. § 1320a-7e(b)(1) ("Each Government agency and health plan shall report any final adverse action (not including settlements in which no findings of liability have been made) taken against a health care provider, supplier, or practitioner."); 45 C.F.R. § 61.7(a)(3) (requiring reports of "[a]ny other negative action or finding by such Federal or State agency that is publicly available information"); 45 C.F.R. § 61.3 ("Any other negative action or finding by a Federal or State licensing agency means any action or finding that under the State's law is publicly available information, and rendered by a licensing or certification authority, including but not limited to, limitations on the scope of practice, liquidations, injunctions and forfeitures. This definition also includes final adverse actions rendered by a Federal or State licensing or certification authority, such as exclusions, revocations or suspension of license or certification that occur in conjunction with settlements in which no finding of liability has been made (although such a settlement itself is not reportable under the statute). This definition excludes citations, corrective action plans and personnel actions.").

state licensure regulations, she argues, falls far below the culpability threshold for being included on the list. See generally 64 Fed. Reg. 57740, 57744 (Oct. 26, 1999) (summarizing public comments prior to adoption of final regulation).[3] That may or may not be so. Like the circuit court, we offer no opinion on the subject. Her equitable argument, however, can be made directly to the HIPDB list administrator for review. See 45 C.F.R. § 61.15(b) (establishing procedures for "disputing a report with the reporting entity"). Whether that effort might prove successful or futile does not change the state-law definition of "case decision" under Code § 2.2-4001. But it does undermine her claim that being included on the HIPDB list constitutes an irreversible harm that, by necessity, must be addressed within the carefully drawn limits of the state administrative process.

### III.

In sum, we hold that the Board's letter advising Dr. Giannoukos that the consent order would be reported to the HIPDB does not constitute a "case decision" under Code § 2.2-4001. The trial court, therefore, correctly dismissed the appeal.

Affirmed.

---

[3] But cf. http://www.npdb-hipdb.com/pubs/gb/HIPDB_Guidebook_Chapter_E.pdf, at E-9 (Feb. 2000) (last visited Dec. 20, 2004) ("A reportable final adverse licensure action must be a formal or official action; it need not be specifically related to professional competence or conduct.").