KELSEY, Judge.
The appellants in this case, five nursing homes, claim the Virginia Department of Health should not have granted a request by a competitor to relocate hospital beds from one of its facilities to two others pursuant to 2005 Va. Acts ch. 99 (House Bill 2316), the uncodified predecessor of Code § 32.1-102.3:5.[1] The appellants argue the Department unlawfully refused to recognize their “good cause” standing to participate in the administrative process. The Department denied that request on the ground that 2005 Va. Acts ch. 99 (which we will refer to simply as the “2005 Relocation Act”) exempted qualifying relocation requests from the plenary administrative process and, by doing so, precluded nonparties from obtaining standing to participate in the Act’s more abbreviated and simplified process.
The appellants filed petitions for appeal to the circuit court pursuant to the Virginia Administrative Process Act (VAPA), Code § 2.2-4000 et seq. The circuit court agreed with the Department’s interpretation of the 2005 Relocation Act and dismissed the VAPA appeal because the appellants had no standing to pursue it. We too find this reasoning persuasive and, thus, affirm the circuit court’s dismissal order.
*589 The appellants argue that this interpretation of the Act converts it into an unconstitutional “special” law in violation of Article IV, §§ 14-15, of the Virginia Constitution. Though we question whether the appellants have standing in this case to challenge the constitutionality of the 2005 Relocation Act, we assume arguendo they do and nonetheless find the Act cannot be judicially vacated as an unconstitutional special law.
I.
Through various affiliates, Medical Facilities of America, Inc. (MFA) operates a nursing home, the Warsaw Healthcare Center, located in Warsaw, Virginia. MFA also operates two other nursing homes, Hanover Healthcare Center, located in Hanover County, and Beaufont Healthcare Center, located in the City of Richmond. Regulated by the Virginia Department of Health, MFA obtained certificates of public need to operate these nursing homes and others throughout the Commonwealth in various planning districts maintained by the Department. In 2005, MFA sought permission from the Department to relocate 120 beds from Warsaw Healthcare Center (located in one planning district) to Hanover Healthcare Center and Beaufont Healthcare Center (both located in another planning district).
Two of the appellant nursing homes wrote letters to the Department requesting an informal fact-finding conference pursuant to Code § 32.1-102.6. The Department refused to conduct a conference, asserting that the 2005 Relocation Act exempts the relocation request from the normal process governing certificates of public need. All of the appellants responded by filing petitions with the Department seeking “good cause” standing to participate in administrative hearings. The Department rejected the petitions and again explained that the 2005 Relocation Act removed MFA’s relocation request from the normal hearing process.
The Department later approved MFA’s request and issued certificates of public need (COPNs) authorizing the bed transfers. Claiming to be “aggrieved parties” from an agency *590 “case decision,” the appellants filed VAPA petitions for appeal in the Circuit Courts of Chesterfield County and the City of Richmond. In their petitions for appeal, the appellants asserted that the Department erroneously interpreted the 2005 Relocation Act. Properly construed, the appellants claimed, the Act did not exempt MFA’s relocation request from the normal administrative process. And whether it did or not, they added, the Department’s decision to approve the request without granting them a hearing should be judicially set aside as arbitrary and capricious.
In their VAPA petitions for appeal, the appellants also alleged that the 2005 Relocation Act violated the prohibition against “special, private, or local law” found in Article IV, §§ 14-15, of the Virginia Constitution. None of the appellants, however, filed any non-VAPA declaratory judgment claims or asserted any separate counts requesting either circuit court to exercise its general jurisdiction. Each of the petitions for appeal limited their claims and their jurisdictional allegations to the judicial review provisions of VAPA and the underlying basic law governing the administrative regulation of nursing homes.
Both VAPA appeals were consolidated in the Chesterfield County Circuit Court. The appellees moved to dismiss the appeals on various grounds, including that the 2005 Relocation Act deprived appellants from obtaining standing as parties in the administrative proceeding and thus precluded their status as aggrieved parties for purposes of VAPA’s judicial review procedures. The circuit court agreed and dismissed the VAPA case. The appellants appeal to us, claiming the circuit court erred in dismissing their VAPA appeals and in not addressing the merits of their claims.
II.
A. The VAPA, The Basic Law & Standing Principles
Under VAPA, the circuit court reviews the agency’s action in a manner “equivalent to an appellate court’s role in an appeal from a trial court.” J.P. v. Carter, 24 Va.App. 707, *591 721, 485 S.E.2d 162, 169 (1997) (quoting Sch. Bd. v. Nicely, 12 Va.App. 1051, 1061-62, 408 S.E.2d 545, 551 (1991)) (internal quotation marks omitted). “In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.” Gordon v. Allen, 24 Va.App. 272, 277, 482 S.E.2d 66, 68 (1997) (citation omitted); Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va.App. 703, 708, 454 S.E.2d 732, 734-35 (1995).
VAPA, however, “does not vest circuit courts with appellate authority over all agency decisions.” Giannoukos v. Va. Bd. of Med., 44 Va.App. 694, 699, 607 S.E.2d 136, 138 (2005). “Only those within the definition of a ‘case decision’ fall within the scope of the VAPA’s judicial review provisions.” Id. (citing Code § 2.2-4026). A “case decision” results from an agency proceeding involving a “named party.” Code § 2.2-4001. A “named party” who loses an agency case decision ordinarily can seek judicial review under VAPA. A party who is not “named,” but a party nonetheless, can appeal to circuit court if he is genuinely “aggrieved” by the case decision, see Code § 2.2-4026, or qualifies as a “necessary party” essential to the resolution of the appeal, Browning-Ferris Ind. v. Residents Involved, 254 Va. 278, 282, 492 S.E.2d 431, 434 (1997), or is otherwise deemed a party under Rule 2A:1.
Nonparties, however, cannot appeal a case decision to the circuit court under VAPA. They can appeal, however, the agency’s decision to exclude them from participating in the administrative process—which, in this context, involves the question whether the agency properly refused to recognize the appellants’ “standing” to intervene and thereby acquire party status. See Tidewater Psychiatric Inst., Inc. v. Buttery, 8 Va.App. 380, 383-84, 382 S.E.2d 288, 290 (1989); see also Chippenham & Johnston-Willis v. Peterson, 36 Va.App. 469, 474 n. 1, 553 S.E.2d 133, 136 n. 1 (2001).
Whether an agency correctly refused to recognize the standing of a putative intervenor depends on the criteria for standing, if any, adopted by the underlying administrative statute, the “basic law” as Code § 2.2-4001 calls it. The basic law may provide broader standing, see, e.g., Harrison v. Ocean *592 View Fishing Pier, LLC, 50 Va.App. 556, 568, 651 S.E.2d 421, 427 (2007), or narrower standing, EDF v. State Water Control Bd., 12 Va.App. 456, 462, 404 S.E.2d 728, 731 (1991), than the default standard adopted by VAPA.
When the basic law refuses to recognize any standing for nonparties seeking to participate in the administrative process, VAPA respects that refusal. While VAPA seeks to “standardize court review” of agency action, it does so “save as laws hereafter enacted may otherwise expressly provide.” Code § 2.2-4000 (emphasis added); see also Health Sys. Agency v. Stroube, 47 Va.App. 299, 308, 623 S.E.2d 444, 449 (2005) (recognizing that the VAPA “governs the appeals process for administrative decisions, unless the agency’s basic law provides otherwise”).
B. The Relocation Act & “Good Cause” Standing
In this case, the circuit court reasoned that the 2005 Relocation Act so completely exempted the relocation request from the normal administrative process that no “good cause” standing for nonparties could be recognized. The court also found no other statutory basis, either in the basic law or VAPA, granting the appellants standing to seek judicial review of the relocation approval. For this reason, the court held the VAPA appeal must be dismissed. We agree with the court’s reasoning and conclusion.
The basic law governing medical care facilities, including nursing homes, states that no “person shall commence any project without first obtaining a certificate” issued by the Department’s Commissioner of Health. Code § 32.1-102.3(A) (emphasis added). The definition of “project” under Code § 32.1-102.1 includes any “increase in the total number of beds” in an “existing medical care facility” like a nursing home. The Department cannot issue a certificate of public need “unless the Commissioner has determined that a public need for the project has been demonstrated.” Code § 32.1-102.3(A).
*593 Code § 32.1-102.6 provides procedures for obtaining certificates of public need for projects. Subsection A provides: “To obtain a certificate for a project, the applicant shall file a completed application for a certificate with the Department and the appropriate health planning agency.” Subsection B describes various reviews, including a public hearing near where the “project” has been proposed. Subsection D requires the Department to make a timely determination on whether the “project” satisfies the public-need criteria. Subsection D makes this determination, with some minor exceptions, subject to “the provisions of the Administrative Process Act” and permits individuals to seek “good cause” standing to intervene in the proceeding and request an informal fact-finding conference under the VAPA. See Code § 32.1-1022.6(D).
The 2005 Relocation Act, however, adds a structural proviso qualifying the broad reach of the basic law. The Act provides in part:
A. Notwithstanding (i) the provisions of§§ 32.1-102.3 and 32.1-102.3:2, (ii) any regulations of the Board of Health establishing standards for the approval and issuance of Requests for Applications, or (iii) the provisions of any current Requests for Applications issued by the Commissioner of Health pursuant to § 32.1-102.3:2, the Commissioner of Health shall accept applications and may issue certificates of public need for nursing home beds when such beds are a relocation from one facility to another facility or facilities under common ownership or control, regardless of whether they are in the same planning district, if, as of December 31 of the year preceding the year in which relocation is proposed, the following criteria are met....
B. A relocation of nursing home beds under the circumstances described herein shall not constitute a “project” as defined in § 32.1-102.1. An entity may not relocate more than two-thirds of the total number of beds for which the facility was licensed prior to any relocation pursuant to this section. Any restrictions that apply to *594 the certificate at the time of the relocation shall remain in effect following the relocation.
2005 Va. Acts ch. 99 (emphasis added).
The circuit court correctly read the 2005 Relocation Act to provide a simplified and abbreviated process for approving or disapproving requests for bed relocations from one nursing home to another under common ownership or control. Subsection B makes clear that a qualifying relocation “shall not constitute a ‘project’ as defined in § 32.1-102.1.” (Emphasis added.) The opening sentence of Code § 32.1-102.1 provides that its statutory definitions, including the definition of “project,” apply throughout Article 1.1 (entitled “Medical Care Facilities Certificates of Public Need”) unless context dictates otherwise. By exempting qualifying relocations from the definition of “project,” subsection B of the 2005 Relocation Act renders inapplicable Article 1.1’s elaborate procedures governing the approval of certificates of public need for projects— including Code § 32.1-102.6’s procedures for holding public hearings and granting good-cause standing to nonparties.
Subsection A of the 2005 Relocation Act reinforces the point by making equally clear that the Department shall process the request “[notwithstanding” Code § 32.1-102.3. That statute requires “projects” to be supported by a showing of public need and details the multitude of considerations governing the agency’s exercise of discretion. In short, the 2005 Relocation Act not only exempts qualifying relocation requests from Article 1.1’s procedures applicable to “projects,” the Act also negates the very statute (Code § 32.1-102.3) putative objectors would rely upon to challenge the agency’s discretion on the ultimate issue of public need.[2] In doing so, the 2005 Relocation Act eschews any “judicially manageable *595 standard of review,” 3 Richard J. Pierce, Jr., Administrative Law Treatise § 17.8, at 1303 (4th ed.2002), which the courts could employ to test the legitimacy of the appellants’ challenge of the agency’s exercise of discretion.[3]
In this respect, VAPA is “virtually identical,” State Bd. of Health v. Godfrey, 223 Va. 423, 434 n. 6, 290 S.E.2d 875, 881 n. 6 (1982) (citation omitted), to the Federal Administrative Procedure Act.Code § 2.2-4000’s standardization of judicial review “save as laws hereafter enacted may otherwise expressly provide” parallels 5 U.S.C. § 701(a), which provides for judicial review of federal agency action “except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.” (Emphasis added.) Agency action is committed to agency discretion by law where a statute is “drawn in such broad terms that in a given case there is no law to apply.” Inova Alexandria Hosp. v. Shalala, 244 F.3d 342, 346 (4th Cir.2001) (citation omitted). “There is no law to apply if ‘the statute is drawn so that a court would have no meaningful standard against which to judge the agency’s exercise of discretion.’ ” Id. (quoting Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985)).
In this case, the 2005 Relocation Act authorizes the Department’s exercise of discretion by providing that the Commissioner “may” issue a certificate to a qualifying relocation request. See 2005 Va. Acts ch. 99. The Act, however, also provides that this exercise of discretion would remain wholly unfettered by any consideration of the various “public need” factors of Code § 32.1-102.3. By framing the subject that way, the 2005 Relocation Act includes no meaningful standard by *596 which any court could judge the reasonableness of the agency’s action when attacked by those who would otherwise have “good cause” standing under Code § 32.1-102.6.[4]
C. The Circuit Court’s Refusal To Adjudicate The Constitutional Claim
Having concluded the appellants lacked VAPA standing to pursue an appeal, the circuit court refused to adjudicate the merits of the appellants’ claims—including their assertion that the 2005 Relocation Act violated the prohibition against “special, private, or local law” found in Article IV, §§ 14-15, of the Virginia Constitution. We understand the court’s reluctance. The appellants made that allegation in their VAPA petitions for appeal predicated solely on the circuit court’s VAPA appellate jurisdiction. The appellants did not file separate complaints seeking declaratory or injunctive relief predicated on the circuit court’s non-VAPA general jurisdiction. See, e.g., St. Luke Hosp. v. Health Policy Bd., 913 S.W.2d 1 (Ky.App.1996) (entertaining a claim for declaratory judgment that a statutory exception to the general COPN law was unconstitutional special legislation). The limited jurisdiction authorized by VAPA “does not extend to any matter ‘subject by law to a trial de novo in any court.’” The Mattaponi Indian Tribe v. Commonwealth, 43 Va.App. 690, 708, 601 S.E.2d 667, 676 (2004) (quoting Code § 2.2-4025(A)), aff'd, 270 Va. 423, 621 S.E.2d 78 (2005).[5]
*597 Appellants argue on appeal to us the seemingly circular thesis that they have VAPA standing to challenge an allegedly unconstitutional deprivation of VAPA standing. They point out, however, the antithesis of their position is equally circular—that a VAPA court cannot enforce an allegedly unconstitutional statutory deprivation of VAPA standing on the ground that the deprived litigant has no standing. We see no need in this case to choose between these two mutually exclusive, but equally anfractuous, theories of VAPA standing. Assuming arguendo the appellants have standing in this VAPA appeal to challenge the constitutionality of the law that eliminates their standing in the first place, we find no merit in their constitutional challenge.
The prohibitions against “special, private, or local law” found in Article IV, §§ 14-15, of the Virginia Constitution track the minimum rationality requirements employed by longstanding due process and equal protection doctrines. Virginia courts “apply the so-called ‘rational basis’ test” when testing the constitutionality of legislation “under due process, equal protection, and special legislation provisions.” Willis v. Mullett, 263 Va. 653, 659, 561 S.E.2d 705, 709 (2002). The special laws prohibitions recognize “the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived, that would sustain it, that state of facts at the time the law was enacted must be assumed.” Jefferson Green Unit Owners Ass’n v. Gwinn, 262 Va. 449, 459, 551 S.E.2d 339, 345 (2001) (citation omitted).
Litigants challenging a statute as an illegitimate special law shoulder a “heavy burden,” Holly Hill Farm Corp. v. Rowe, 241 Va. 425, 432, 404 S.E.2d 48, 51 (1991), one calculated to safeguard the maxim that all “legislative acts are ‘presumed to be constitutional,’” Boyd v. County of Henrico, 42 Va.App. 495, 506, 592 S.E.2d 768, 774 (2004) (en banc) *598 (quoting In re Phillips, 265 Va. 81, 85, 574 S.E.2d 270, 272 (2003)). “This presumption is ‘one of the strongest known to the law.’ ” Id. at 507, 592 S.E.2d at 774 (citation omitted). “Under it, courts must ‘resolve any reasonable doubt’ regarding the constitutionality of a law in favor of its validity.” Id. (citations omitted). “To doubt is to affirm.” Id. (citation omitted).
The 2005 Relocation Act exempts a specific class of bed transfers from an administrative process that has been criticized by some as inefficient and' expensive. See generally Report of the Special Joint Subcommittee Studying Certificate of Public Need, Sen. Doc. No. 6, at 46 (2001) (noting the “strong feeling that the certificate of public need process needs streamlining and could be reduced”). For bed transfers meeting the applicable conditions, the 2005 Relocation Act provides a streamlined, non-litigious process to seek administrative approval.
The appellants argue that if the Act truly has this streamlining effect, it should be struck down as an example of economic favoritism because it applies only to “corporations owning multiple nursing homes” and, as a result, “only large, influential corporations stand to benefit” from the Act’s abbreviated procedures. See Appellants’ Br. at 34. To make matters worse, the appellants contend, the General Assembly specifically intended the Act to benefit only MFA. See Appellants’ Br. at 34. We disagree with the reasoning underlying both assertions.
To begin with, it is true the Act applies only to companies owning or controlling at least two nursing homes. A company owning one nursing home cannot transfer beds to another home owned and operated by some other company. This distinction, however, cannot be characterized as a “purely arbitrary” legislative classification, Martin’s Ex’rs v. Commonwealth, 126 Va. 603, 612, 102 S.E. 77, 80 (1920), devoid of any rational basis. Limiting the Act’s reach to nursing homes under common ownership or control discourages the creation of a de facto market in bed relocations between disparate *599 corporate entities and places the entire relocation effort under the settling effect of a unified business plan.
Whether limiting the Act to commonly owned or operated nursing homes represents sound public policy, we are not competent to say. Judicial review does not evaluate the “propriety, wisdom, necessity and expediency” of legislation. Mouberry v. Commonwealth, 39 Va.App. 576, 585-86, 575 S.E.2d 567, 571 (2003) (citations omitted). We ask only whether the statutory classification erects an irrational, arbitrary distinction—one that no conceivable state of facts could reasonably sustain. Jefferson Green Unit Owners Ass’n, 262 Va. at 459, 551 S.E.2d at 345. None of. the appellants’ arguments rise to this level.
For similar reasons, we cannot accept the appellants’ allegation that the General Assembly enacted a facially neutral statute with the sub silentio intent that it “inure to the benefit of MFA alone.” Appellants’ Br. at 34. The argument rests on the factual assumption that, in 2005, MFA operated the only nursing home business in the Commonwealth that could have met the criteria of the Act. MFA rejects this assumption, arguing that the legislative history of the Act, including the floor statements of the patron, demonstrates that at least five or six nursing homes might have met the criteria in 2005.
We think this factual debate misses the point. The question is not the size of the statutory class in 2005. The Act is not a one-time piece of legislation applicable only to nursing homes operating during the year of its enactment. The Act applies in perpetuity and shuts the class door fully only when repealed. Even if the 2005 statutory class size benefited a favored few, the question is whether it would forever do so. We can strike down legislation as an unconstitutional special law only when “the class established by its provisions is at once so narrow and so arbitrary that duplication of its content is to be ranked as an unexpected freak of chance, a turn of the wheel of fortune defying probabilities.” Peery v. Va. Bd. of Funeral Dirs. & Embalmers, 203 Va. 161, 167, 123 S.E.2d 94, 98 (1961) (citation omitted).
*600 Such an assertion cannot be made here. It would hardly be an “unexpected freak of chance” or a “turn of the wheel of fortune defying probabilities,” Peery, 203 Va. at 167, 123 S.E.2d at 98 (citation omitted), for the 2005 Relocation Act to benefit future nursing homes. The nursing home industry, like most economic markets, is far from static. Corporate reorganizations and asset acquisitions can be hypothesized that could create conditions consistent with the criteria of the Act. To be sure, the General Assembly may have even intended the Act to encourage just that.
It may well be that, at least in the foreseeable future, the 2005 Relocation Act will apply only to a relatively small portion of the nursing home industry. “Laws may be made to apply to a class only,” however, “and that class may be in point of fact a small one, provided the classification itself be a reasonable and not an arbitrary one, and the law be made to apply to all of the persons belonging to the class without distinction.” Ex parte Settle, 114 Va. 715, 718-19, 77 S.E. 496, 497 (1913). The facially neutral criteria of the Act insures that its streamlined process, while arguably limited to a small sector of the nursing home industry, may be accessed by any applicant meeting the statutory criteria.
Finally, we respectfully decline the suggestion of our colleague in dissent to remand this case to the agency for it to conduct an evidentiary hearing on the constitutionality of the 2005 Relocation Act. Nothing in VAPA authorizes an administrative agency to conduct evidentiary hearings into the constitutionality of legislation and to make factual findings which, under Code § 2.2-4027, would be entitled to judicial deference on appeal to the circuit court.[6] Vested with the sui generis *601 power of judicial review, the judiciary alone must perform whatever factfinding is necessary to fulfill this task. It cannot be delegated, in whole or in part, to the executive branch of government.
III.
Because the 2005 Relocation Act precludes the appellants from acquiring standing to seek judicial review of the agency’s actions in this case, the circuit court properly dismissed this VAPA appeal. Assuming arguendo the appellants nonetheless have standing to challenge the constitutionality of the Act, we find no merit in their challenge.

Affirmed.

. In 2007, the General Assembly reenacted 2005 Va. Acts ch. 99 without subsection (A)(3). See Code § 32.1-102.3:5 (2007 Va. Acts ch. 398).

. The appellants contend that certain enforcement provisions, like Code § 32.1-102.4(C)(2) and (E), might likewise be rendered inapplicable if subsection B of the 2005 Relocation Act is read literally. The excision of certain relocation requests from the "project” definition, however, may or may not have any impact on the Department’s enforcement powers. That question must await a litigable controversy in which the issue is directly in play.

. Appellants also argue that they should be considered necessary parties. We find no merit in this assertion. They cannot be necessary parties without first being parties. See, e.g., Browning-Ferris Ind., 254 Va. at 282-83, 492 S.E.2d at 434 (holding a permittee, the named party in an administrative case decision, is necessary to the VAPA appeal of the permit). Because the appellants lacked standing to intervene in the administrative process, a fortiori, they cannot be necessary to the judicial process on appeal.

. The appellants argue that subsection B, as we read it, would preclude the application of Code § 32.1-102.3 even without the ‘'[njotwithstanding” proviso of subsection A. Our interpretation, they conclude, should be rejected by the rule of statutory interpretation against treating some statutory language as superfluous. We acknowledge the point, but cannot treat it as dispositive because Virginia courts "do not resort to the rules of statutory interpretation where, as here, language contained in a statute is free from ambiguity.” Mouberry v. Commonwealth, 39 Va.App. 576, 582 n. 2, 575 S.E.2d 567, 570 n. 2 (2003) (quoting Wilder v. Attorney Gen., 247 Va. 119, 124, 439 S.E.2d 398, 401 (1994)).

. If the appellants had filed freestanding, non-VAPA claims seeking declaratory or injunctive relief within the circuit court’s general jurisdiction, our segmented appellate authority would preclude us from hearing the case. See The Mattaponi Indian Tribe, 43 Va.App. at 709- *597 10, 601 S.E.2d at 676-77, aff'd, 270 Va. at 438 n. 6, 621 S.E.2d at 86 n. 6.

. "On appeal of an agency decision, 'the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency’s findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion.' " Chippenham & Johnston-Willis, 36 Va.App. at 475, 553 S.E.2d at 136 (citation omitted); see also Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 441, 621 S.E.2d 78, 88 (2005).