Paul Mack BAUGH, individually and on behalf of all others similarly situated, Appellee,

v.

James WOODARD, Secretary of North Carolina Department of Corrections; Amos Reed, Former Secretary of North Carolina Department of Corrections; Ralph Edwards, Director of North Carolina Department of Corrections; Richard Kiel, Chief of Medical Services DOC; Charles Smith, M.D.; Sam Garrison, Warden; Frank L. Mahan, Superintendent of Wayne County Unit, individually and in their official capacities, Appellants,

and

Billy Royal, M.D.; Richard Jeffries, Nurse; James Dupree, Nurses' Aide; Sarah T. Morrow, Secretary of North Carolina Department of Human Resources; R.J. Blackley, Acting Director of N.C. Div. of Mental Health, Retardation, etc.; Bruce E. Whitaker, Chairman North Carolina Committee for Mental Health and Retardation, individually and in their official capacities, Defendants.

No. 85–6388.

United States Court of Appeals, Fourth Circuit.

Reargued July 16, 1986.

Decided Jan. 8, 1987.

James Peeler Smith, Asst. Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Raleigh, N.C., on brief), for appellants.

Christine O'Connor Heinberg, Carolina Legal Assistance (Deborah Greenblatt, Carolina Legal Assistance, Richard Giroux, North Carolina Prisoner Legal Services and Gregory Malhoit, East Cent. Community Legal Services, Raleigh, N.C., on brief), for appellee.

Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

This appeal arises from a class action brought in the United States District Court for the Eastern District of North Carolina by all persons who have been or will be incarcerated by the North Carolina Department of Correction (DOC) and who have been or will be involuntarily subjected to inpatient treatment at a DOC inpatient mental health facility. Plaintiffs claimed that the procedures followed by the DOC in transferring inmates to inpatient mental health facilities were inadequate to satisfy due process requirements.[1] On cross-motions for summary judgment, the district court held that North Carolina inmates have a constitutional liberty interest in not being transferred to a prison facility exclusively for the mentally ill. 604 F.Supp. 1529. To protect this interest, the district court required the DOC to provide the following procedural protections to inmates before transferring them to correctional inpatient mental health facilities:

1. Written notice to the prisoner that referral to an inpatient mental facility is being considered, including a statement of the reasons for the referral;

2. a hearing sufficiently after notice is given to allow the prisoner to prepare his objections;

3. an opportunity at the hearing for the prisoner to testify in person, present documentary evidence, present witnesses and confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation or cross-examination;

4. a neutral and independent decision maker, who may be from within the prison system, but who has the authority to refuse admission;

5. a written statement by the decision maker as to reasons for his decision to transfer, which decision must be concurred in by two psychiatrists or psychologists;

---

1. The plaintiffs also alleged that they had been and were being forcibly treated with psychotropic medications in violation of their constitutional rights. The parties settled this issue by means of the formal adoption of a policy with respect to involuntary administration of psychotrophic medications and a consent judgment.

We emphasize that this opinion does not concern itself with transfers of a prisoner to an inpatient mental hospital other than for treatment. See *Vitek*, infra, 445 U.S. p. 482, 100 S.Ct. p. 1258. Thus, the frequent referrals and transfers of prisoners by courts to mental hospitals for observation, evaluation, and the like are not affected by our decision.

6. qualified and independent assistance from an adviser, not necessarily an attorney, to help the prisoner prepare his objections;

7. periodic review of the continuing need for treatment; and,

8. effective and timely notice of all the above rights.

The State appeals. We affirm in part and remand for further proceedings consistent with this opinion.

As a result of the compliance by the State with the district court's order and the issuance of new regulations in compliance therewith, there remains but one issue in this appeal, namely the place of and timing of the due process hearing required by *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The State contends that it need not hold a hearing prior to an inmate's physical transfer to an inpatient mental health facility. Rather, the State contends that any hearing required under *Vitek* could be held after the inmate's transfer to the inpatient mental health facility, but prior to the inmate's admission therein and still be constitutionally proper. It is this limited issue that we address in this opinion.[2]

Mental health care of North Carolina inmates is administered by the Department of Prisons (DOP), a division of the DOC. Prior to the judgment in this case, DOP regulations provided that consideration of an inmate's involuntary transfer to an inpatient mental health facility began when referred by medical personnel or when custodial personnel observed the inmate engaging in behavioral abnormalities. See DOP Health Care Procedures Manual § 403.1 (May 1, 1980). The custodial personnel would refer the inmate in question to an outpatient clinic which would either provide treatment or refer the inmate to an inpatient mental treatment facility. Id. at

§ 404.1. At this point in the mental health transfer process, the inmate was informed of his impending transfer and given an explanation of the reasons therefor.

Upon his arrival at the inpatient mental health facility, mental health personnel would evaluate the inmate and decide whether to admit him to the facility for treatment. If the mental health personnel at the receiving facility determined that the inmate should not be admitted to that facility, despite the referral, then the case would be referred to the Directors Mental Health Review Committee for resolution of any disagreement between the mental health personnel at the receiving facility and those at the referring facility. Id. at § 404.2. Upon his admission to an inpatient mental health facility, the inmate would remain in the facility until his treatment team determined that he was capable of returning to the general prison population. Id at § 404.3.

The district court held that these procedures for an inmate's involuntary transfer to an inpatient prison mental health facility did not comport with the procedural requirements for such transfers that the U.S. Supreme Court had set forth in *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The district court then ordered the DOC to submit proposed regulations implementing the procedures outlined above.

Pursuant to the district court's directive, the DOC submitted proposed regulations, which the district court subsequently approved and which were implemented throughout the North Carolina prison system in January 1986. See DOP Health Care Procedures Manual § 416 (December 1985). Under these new regulations, an inmate who refuses a voluntary transfer to an inpatient mental health facility is provid-

---

**2.** We note that the question of emergency referrals to an inpatient prison mental health facility is not at issue in this case and our holding today is solely concerned with nonemergency referrals to such facilities.

If there be any doubt as to our understanding of the gist of the briefs and argument, we add

that we do not distinguish, for the purpose of compliance with *Vitek*, inpatient mental treatment hospital facilities whether operated by the prison system, as in the case here, or by another state agency as in *Vitek*.

ed with a hearing prior to his physical transfer to said facility, at which the State must present sufficient evidence to show (a) that the inmate is mentally ill; (b) that the inmate requires services that are not currently available to him on an outpatient basis; and (c) that the unit to which the inmate is to be transferred is better able to provide the needed treatment services than the housing unit to which the inmate is currently assigned. See id. at § 416.-4(D)(2). During the hearing, the inmate may present evidence and question any witnesses for the State. Id. at § 416.4(D)(4). The inmate, moreover, has an adviser, not necessarily an attorney, to assist him in the preparation and presentation of his case. Id. at § 416.2(6). The hearing officer must document the results of the hearing, clearly summarizing the evidence presented and the rationale for his decision. Id. at § 416.4(D)(5). Furthermore, for the hearing officer's decision to become final, two psychiatrists or psychologists, one of whom must be located at the receiving unit, must concur in the decision. Id. at § 416.4(D)(7). Finally, upon the inmate's request, a hearing officer must review the case within ninety days after the initial hearing to determine whether the assignment to the inpatient mental health facility should be extended or terminated. Id. at § 416.4(D)(8). Subsequent reviews will take place thereafter every 180 days, upon the inmate's request. Id.

The State acknowledges that these new mental health transfer procedures do not create as much burden on the delivery of mental health care to North Carolina inmates as had been anticipated, and the sole objection that the State continues to press in this appeal regarding these new procedures concerns the place and timing of the hearing which is now required prior to the inmate's physical transfer to the inpatient mental health facility, rather than promptly after his arrival at the receiving facility and before his actual admission therein. It is the propriety of this requirement that we now address.

The United States Supreme Court has consistently stated that due process is a flexible concept that a court must adapt to the particular circumstances of the case at hand. See, e.g., *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). To determine what procedures are required in any given case to protect a constitutionally cognizable liberty or property interest, courts must balance those factors that the Supreme Court set forth in its opinion in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335, 96 S.Ct. at 903.

The district court considered these factors when it determined that additional procedural safeguards were required to protect inmates from erroneous or improper transfers to inpatient mental health facilities. For the most part, we concur in the district court's assessment and balancing of these factors. We conclude, however, that the district court erred in its assessment of the potential for erroneous transfer should the required hearing take place after the inmate's physical transfer, but prior to his admission at the receiving facility. Consequently, we conclude that due process does not require the DOC to conduct a hearing concerning the propriety of an inmate's involuntary mental health transfer prior to the inmate's physical transfer from the unit at which he is currently housed.

In its opinion, the district court stated that should the hearing take place after the inmate's physical transfer from the unit at which he is currently housed, the prisoner would, at that point, have already been deprived of his due process rights and subjected to stigmatization and compelled behavioral treatment. In reaching this con-

clusion, however, the district court overlooked the fact that, after his physical transfer, an inmate must first be admitted to the receiving inpatient prison mental health facility before his psychiatric treatment will begin. Thus, immediately following the inmate's physical transfer to the receiving facility, but prior to his admission therein, the inmate has yet to suffer few, if any, of the adverse consequences resulting from such a transfer for which the Court in *Vitek* considered due process protections to be required. We accordingly vacate the district court's order to the extent that it can be read to require a hearing prior to an inmate's physical transfer from the unit at which he is currently housed. We hold instead that due process is satisfied if the inmate's hearing is held promptly after the inmate's physical transfer to the receiving facility, but before the inmate's admission therein, so long as the inmate's psychiatric treatment does not begin prior to the inmate's admission to the inpatient facility.[3] Our conclusion in this regard is reinforced by the fact that allowing the DOC to conduct due process hearings at the receiving rather than the referring facility will allow the DOC to centralize its hearing process, thereby decreasing the burden that such hearings may impose on the delivery of mental health care to inmates in the North Carolina prison system.

In sum, we affirm the district court's judgment below in each respect except that concerning the timing of the hearing required to protect inmates' interest in avoiding involuntary transfers for treatment to inpatient prison mental health facilities. We vacate that portion of the district court's judgment that requires the DOC to conduct these hearings prior to the inmate's physical transfer to the inpatient facility. We hold that a hearing conducted promptly after an inmate's physical transfer to the inpatient facility, but before the inmate's actual admission therein, so long

as the inmate's psychiatric treatment does not begin prior to his admission at the inpatient facility, will serve adequately to protect the inmate's interest in avoiding erroneous mental health transfers without imposing undue burdens on the delivery of mental health care to inmates.

Accordingly, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR ACTION NOT INCONSISTENT WITH THIS OPINION.

---

**3.** The State suggested at oral argument that the hearing should be held within 10 days after the physical transfer, and that the Director's Mental Health Resources Committee would be an appropriate hearing body. While both of these suggestions are apparently reasonable, we think they are matters better left to the district court in the first instance and we express no opinion on them at this time.