Ephigenia K. GIANNOUKOS,
M.D., Plaintiff,

v.

William L. HARP, M.D., Executor Director, Virginia Board of Medicine, and Robert A. Nebiker, Director, Virginia Department of Health Professions, Defendants.

No. CIV.A.3:05 CV 167–HE.

United States District Court,
E.D. Virginia.
Richmond Division.

May 9, 2005.

William Harrison Baxter, II, Joseph Patrick McMenamin, McGuireWoods LLP, Richmond, VA, for Plaintiff.

Emily Oates Wingfield, David Edward Johnson, Jane D. Hickey, Judith W. Jagdmann, Office of the Attorney General, Richmond, VA, for Defendants.

### MEMORANDUM OPINION

**(Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss or for Summary Judgment)**

HUDSON, District Judge.

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss or for Summary Judgment. Both counsel have submitted extensive memoranda of law supporting their respective positions. The Court heard oral argument on April 26, 2005. At the conclusion of that hearing, the Court denied Plaintiff's Motion for Preliminary Injunction for the reasons stated on the record and more specifically discussed below. Defendants' Motion to Dismiss or for Summary Judgment was taken under advisement. On further consideration, the Court will grant Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

The plaintiff, Ephigenia K. Giannoukos, is a physician whose principal place of practice is the State of Delaware. She is also licensed to practice in the Commonwealth of Virginia. Section 54.1–2910.1 of the Code of Virginia, 1950, as amended ("Va.Code") and 18 Virginia Administrative Code 85–20–280, *et seq.* ("VAC"), requires physicians licensed in Virginia to periodically submit a professional profile describing their qualifications and practice. Failure to timely submit the required profile exposes "that licensee to disciplinary action by the Virginia Board of Medicine." See 18 VAC 85–20–300(a). The statutorily mandated profile contained such information as the physician's education, certifications, the scope of their practice, the locations of their practice, any felony convictions, and any adverse actions taken by states and organizations other than the Virginia Board of Medicine ("the Board"). The Board is required to make this information available to the public.

Between March and September of 2001, Plaintiff was informed by three (3) communications from the Board that she had failed to file her required practitioner profile. In the face of disciplinary action, Plaintiff filed her profile approximately one (1) year after its due date. In order to avoid a formal administrative disciplinary hearing, Plaintiff entered into an agreed Consent Order ("Consent Order") with the Board. As a part of the findings of fact recited in the Consent Order, Plaintiff acknowledged that she had not provided her practitioner's profile within the required time frame, despite three (3) separate letters requesting the information. Plaintiff also agreed that her actions violated Virginia law. The Board found that the Consent Order affected Plaintiff's "license to practice medicine in the Commonwealth of Virginia" and, pursuant to Va.Code § 54.1–2401, imposed a fine of $250.00. The Board agreed that no further sanctions would be imposed against Plaintiff.

In his letter of transmittal conveying the endorsed Consent Order to the Board,

Plaintiff's counsel requested that the Board not report the Consent Order to the Federal Health Care Integrity and Protection Data Bank ("HIPDB"). The HIPDB is a national data bank administered by the Department of Health and Human Services ("HHS") for "the reporting of final adverse actions" by state and federal agencies against healthcare providers, suppliers and practitioners. *See* 42 U.S.C. § 1320a–7e(a). Access to the data bank is limited to authorized governmental agencies and registered healthcare plans. Failure to report an adverse action against a licensee could result in the imposition of sanctions. 45 C.F.R. § 61.7(d). The Virginia Department of Health Professions ("VDHP") is an agency duly registered with the HIPDB obligated to report and disclose final adverse actions pursuant to 42 U.S.C. § 1320a–7e.

Although the Board originally indicated to Plaintiff's counsel that they did not believe that the Consent Order was reportable to HIPDB, the Virginia Attorney General's Office ("Attorney General's Office") subsequently decided differently. The Attorney General's Office advised the Board that the Consent Order was reportable under 42 U.S.C. § 1320a–7e(g)(1)(A)(iii)(III) because the Consent Order constituted a "negative action or finding by such federal or state agency that is publicly available information."[1]

Plaintiff immediately filed an action under the Virginia Administrative Procedures Act in the Circuit Court of Henrico County ("Circuit Court") seeking to enjoin the Board from reporting the Consent Order to HIPDB. Plaintiff argued that under the rules and regulations issued by the Office of the Secretary of Health and Human Services ("HHS"), 64 *FR* 57740, the Consent Order is not reportable to HIPDB. As part of the commentary, the Secretary of HHS opines that "administrative actions, such as limited training permits, limited licenses for telemedicine, fines or citations that do not restrict a practitioner's license, or personal actions for tardiness, are not within the range of actions intended by the statute." The Circuit Court dismissed Plaintiff's action for lack of jurisdiction, holding that the Virginia Administrative Procedure Act did not apply because the agency's letter regarding its own reporting obligations under federal law did not constitute a "case decision subject to appellate review." The Court of Appeals of Virginia agreed and affirmed the decision. *Giannoukos v. Virginia Board of Medicine and Department Of Health Professions*, 44 Va.App. 694, 607 S.E.2d 136 (2005). The Supreme Court of Virginia dismissed her appeal for procedural default.

Plaintiff now brings suit in the United States District Court for the Eastern District of Virginia seeking relief under 42 U.S.C. § 1983 alleging that the reporting of the Consent Order to HIPDB would deprive her of her right to practice medicine without due process of law. Plaintiff contends that her failure to timely disclose her practitioner profile is not a reportable adverse action. She maintains that simply reporting the Consent Order to HIPDB would deprive her of her constitutionally protected right to practice medicine, because hospitals and healthcare plans consult the data bank in determining whether to grant hospital privileges or plan membership. Plaintiff asks this Court to grant preliminary and permanent injunctive relief barring the Board and the VDHP from reporting the Consent Order to HIPDB.

---

1. Plaintiff characterizes the reporting of the Consent Order to HIPDB as an additional sanction. The Court disagrees. It is a consequence of the Consent Order analogous to a court transmitting a traffic infraction to the Department of Motor Vehicles.

Central to the resolution of both pending motions, is the sufficiency of the jurisdictional moorings. As a critical element of Plaintiff's Section 1983 claim, she contends that the mere act by an agency of the Commonwealth of Virginia of conveying the existence of the Consent Order to HIPDB deprives her of a constitutionally protected interest without due process of law. Parsed to its core, the argument has two elemental components. First, that a constitutionally protected right is affected, and second, that she has been deprived of some form of due process.

■ Plaintiff asserts that the mere act of reporting the Consent Order to HIPDB will deprive her of her right to practice her chosen profession. Her counsel argues that the presence of her name in the HIPDB data bank may materially affect her hospital privileges and the insurability of her practice. At oral argument, counsel was unable to advance any specific policies, practices or information to confirm these potential consequences. As pointed out by Defendants, the State's reporting of the Consent Order to the national data bank may have an impact on Plaintiff's professional reputation, but it does not deprive her, by any stretch of the imagination, of her right to practice medicine. The act of reporting a truthful administrative action to a national data bank, such as HIPDB, does not implicate constitutionally protected interests, despite the potential effect on her professional reputation. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Injury to professional reputation is not specially protected by Section 1983 or the due process clause. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

The immediate case is easily distinguishable from those in which governmental action has operated to "bestow a badge of infamy" or disloyalty, with an attending foreclosure from other employment opportunity without a chance to be adequately heard.[2] *See Wieman v. Updegraff*, 344 U.S. 183, 190–91, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *see also Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 140, 71 S.Ct. 624, 95 L.Ed. 817 (1951). This case does not involve governmental defamation. The Director of the VDHP reported the Consent Order based upon the opinion of the Virginia Attorney General's Office ("Attorney General") that it was required by federal law. Plaintiff counters that the Attorney General's opinion is wrong in that the Consent Order is a mere administrative order not reportable under the Code of Federal Regulations. The Attorney General's Office disagrees and construes the Consent Order as a statutory disciplinary sanction. In the Attorney General's view, the HHS, who administers HIPDB, is in the better position to interrupt its own regulations and to determine whether or not the Consent Order is reportable. The regulations governing HIPDB provide a specific remedy for physicians who contest the requirement that an adverse action be reported. If the HHS concludes that an action is not reportable, any reference to it will be removed from the data bank.

■ The second element of Plaintiff's constitutional argument is that she has been deprived of due process. No where in the Complaint does it identify any form of statutory or administrative process denied to Plaintiff. She conceded her failure

---

2. At the Court's invitation, counsel for Plaintiff filed supplemental authority supporting his contention that the Commonwealth's action has placed constitutionally protected interests at risk. In each case cited, the State action at issue involved either a formal adjudication rather than an administrative decision or an action depriving petitioners of their livelihood. Neither is the case here.

to timely file the practitioner's profile as required by Virginia law. Her counsel obviously recognized that the adverse action was potentially reportable even before his client signed the Consent Order. Counsel urged the Board not to report the infraction because in his opinion, the underlying regulations did not require it. Upon being later informed that the VDHP had been directed by the Attorney General to report the Consent Order, counsel again conveyed his interpretation of the governing regulations to the state agency. Plaintiff appealed the State's decision to report the action to the Circuit Court of Henrico County, the Court of Appeals of Virginia, and the Supreme Court of Virginia, to no avail.

During oral argument, the Court asked counsel for Plaintiff what additional process his client was due. His response was that the Commonwealth of Virginia had misconstrued their reporting obligation and that the Consent Order should not have been forwarded to HIPDB. In essence, at issue is the *decision* to report, not the *process* by which the decision was reached. Neither the Complaint in this case nor oral argument of counsel identifies any statutory or administrative remedy not fully exercised by Plaintiff. There is no constitutional bar to an independent sovereign exercising its administrative judgment and interpreting the law as it sees appropriate, as long as such action does not abridge the rights of its citizens. With this predicate, the Court will turn to the merits of the pending motions.

■ The decision whether to issue a preliminary injunction is committed to the sound discretion of the trial court. *Hughes Network Systems v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir.1994). Preliminary injunctive relief is an extraordinary remedy, involving the exercise of a very far reaching power, which is to be applied only in the limited circumstances which clearly demand it. *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir.1997). The Court's discretion in determining whether to issue a preliminary injunction is guided by a hardship balancing test. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991). The classic recital of the four factors governing preliminary injunctions is contained in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195–96 (4th Cir. 1977). These factors are:

1. Whether Plaintiff will suffer irreparable harm if the injunctive relief is not granted;
2. The injury to the defendant should injunctive relief be granted;
3. The plaintiff's likelihood of succeeding on the merits of the action; and
4. The public interest.

While the Court must weigh all four factors in reaching its decision, the comparative harm to the parties is the most important component of the analysis. *Manning*, 119 F.3d at 263.

■ The only evidence of harm offered by Plaintiff were her counsel's representations that reporting the Consent Order to HIPDB would effect her ability to practice medicine. He contends that a mere listing of her name in the data bank would adversely effect her ability to obtain hospital privileges and insurance coverage. While the Court respects counsel's representations, they appear on their face to be mere speculation and, frankly, counterintuitive. Publication of the Consent Order in the national data bank may have some effect on her reputation as a physician, but at base, it is an accurate reflection of her failure to follow the laws of Virginia. It is analogous to a serious traffic infraction on a person's Division of Motor Vehicles driving record. Moreover, the regulations governing HIPDB provide an intra-agency

administrative remedy to challenge the requirement of reporting adverse actions. Plaintiff's right to petition for relief at the receiving end of the reporting process, arguably satisfies any due process rights to which she may be entitled. *See Baugh v. Woodard, et al.,* 808 F.2d 333, 336–37 (4th Cir.1987). If indeed Plaintiff is correct that the Consent Order in this case is a mere administrative action not reportable under the governing regulations, she will have an opportunity to address that with the HIPDB administrator. Therefore, based on the record at hand, this Court must conclude that Plaintiff will not suffer irreparable harm if injunctive relief is denied. The failure of Plaintiff to show a likelihood of actual imminent irreparable harm, is itself a sufficient basis for a denial of her Motion for Preliminary Injunction. *Manning,* 119 F.3d at 266.

On the other side of the ledger, the harm to the Virginia Board of Medicine is minimal, but none the less significant. The Attorney General's Office has determined that federal law requires the Consent Order to be reported to HIPDB because it is a negative action or finding by a state agency that is publicly available. *See* 45 C.F.R. § 61.7(a)3. Failure to follow its reporting duty could have serious implications for the Commonwealth of Virginia.

Next, the Court must consider Plaintiff's likelihood of succeeding on the merits. For the reasons discussed in more detail above, the Court does not believe that there is any state action in this case that rises to constitutional dimensions. The Commonwealth's administrative decision to report the adverse finding does not implicate a property or liberty interest protected by due process. Even if Plaintiff's right of professional reputation as a medical doctor was constitutionally protected, which it is not, the reporting of a Consent Order does not trigger an additional due process right not previously afforded to Plaintiff. To require the Commonwealth to provide an independent right to challenge administrative decisions to report information to federal regulation agencies would impose an imponderable burden not contemplated by the due process clause. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Richardson v. Town of Eastover,* 922 F.2d 1152, 1160 (4th Cir.1991). The likelihood of Plaintiff prevailing on the merits is therefore is minimal.

Public policy strongly favors the enforcement of state regulations. The Commonwealth of Virginia had a reporting requirement mandated by both federal and state law. Plaintiff's Motion for Preliminary Injunction will therefore be denied.

Defendant's Motion to Dismiss or for Summary Judgment is driven in part by the same analysis employed with respect to the Motion for Preliminary Injunction. Even considered in the light most favorable to the Plaintiff, and assuming all factual allegations to be true, the Court is of the opinion that the Complaint fails to allege any state action which deprived the Plaintiff of a constitutionally protected right without due process of law. The Complaint fails to state a cause of action under 42 U.S.C. § 1983, and it appears beyond doubt that under Rule 12(b)(6) review, Plaintiff could prove no set of facts in support of her claim that would entitle her to relief. *See McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir. 1996) *(en banc ).* Accordingly, Defendant's Motion to Dismiss is granted.

An appropriate Order will accompany this Memorandum Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.